# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA FERGUS, Individually and On Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> IMMUNOMEDICS, INC., CYNTHIA L. SULLIVAN, PETER P. PFREUNDSCHUH, and DAVID GOLDENBERG, <br><br> Defendants. | Civil Action No. 2:16-cv-3335-KSH-CLW |

## DEFENDANTS' BRIEF IN SUPPORT OF MOTION TO DISMISS
## THE SECOND AMENDED CONSOLIDATED COMPLAINT

B. John Pendleton, Jr.
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel.:   (973) 520-2561
john.pendleton@dlapiper.com

*Attorneys for Defendants Immunomedics, Inc.
and Peter P. Pfreundschuh*

Albert H. Manwaring, IV
**Morris James LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Tel.:   (302) 888-6868
AManwaring@morrisjames.com

Robert A. Van Kirk
(to be admitted *pro hac vice*)
**Williams & Connolly LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:   (202) 434-5163
rvankirck@wc.com

*Attorneys for Defendants David Goldenberg
and Cynthia L. Sullivan*

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ..................................................................................................1

RELEVANT ALLEGATIONS..................................................................................................2

    A.    Background of Immunomedics and IMMU-132 ................................................2

    B.    Timeline of Public Disclosures Regarding IMMU-132.........................................3

    C.    Dr. Goldenberg and Ms. Sullivan's Stock Transactions ......................................7

RELEVANT PROCEDURAL HISTORY ...................................................................................9

STANDARD OF REVIEW.......................................................................................................9

    A.    Standard of Review ...............................................................................9

    B.    Standard for Review of Exchange Act Claims ...................................................11

LEGAL ARGUMENT ...........................................................................................................12

I.    PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL ...........................12

    A.    Plaintiff Failed to Plead that Defendants Made Any Material
            Misrepresentations or Omissions...........................................................13

          1.    The Statements Were True When Made.................................................13

          2.    The Statements Were Inactionable Statements of Opinion ......................18

    B.    Plaintiff Failed to Plead Scienter .........................................................19

          1.    The repeated disclosure of the Boston presentation "totally
              undermines" any inference of scienter ...................................................21

          2.    There are no plausible allegations of any motive to defraud ...................22

II.    PLAINTIFF'S SECTION 20(A) CLAIM SHOULD BE DISMISSED...........................25

CONCLUSION.....................................................................................................................25

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*In re Advanta Corp. Sec. Litig.*,
180 F.3d 525 (3d Cir. 1999) ............................................................................14

*In re Amarin Corp. PLC Secs. Litig.*,
2016 U.S. Dist. LEXIS 55568 (D.N.J. Apr. 26, 2016) (Wolfson, J.), *aff'd*, 689
F. App'x 124 (3d Cir. 2017) ....................................................................... 15, 19

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ........................................................................................10

*In re Bear Stearns Cos., Inc. Secs., Derivative & ERISA Litig.*,
763 F. Supp. 2d 423 (S.D.N.Y. 2011) ...............................................................8

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ........................................................................................10

*Biondolillo v. Roche Holding AG*,
2018 U.S. Dist. LEXIS 162858 (D.N.J. Sept. 24, 2018) ....................................12

*In re Burlington Coat Factory Sec. Litig.*,
114 F.3d 1410 (3d Cir. 1997)............................................................. 10, 11, 18

*City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*,
908 F.3d 872 (3d Cir. 2018) ...................................................................*passim*

*City of Edinburgh Council v. Pfizer, Inc.*,
754 F.3d 159 (3d Cir. 2014) ....................................................... 15, 18, 19, 25

*In re Digital Island Sec. Litig.*,
357 F.3d 322 (3d Cir. 2004) ...........................................................................20

*Durant v. Horton*,
No. 07-93(JAG), 2008 WL 2510661 (D.N.J. June 19, 2008)...............................7

*Fowler v. UPMC Shadyside*,
578 F.3d 203 (3d Cir. 2009) ...........................................................................10

*In re GeoPharma, Inc. Sec. Litig.*,
411 F. Supp. 2d 434 (S.D.N.Y. 2006) ..............................................................20

*Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*,
241 F. App'x 832 (3d Cir. 2007) .....................................................................20

*In re Hertz Global Holdings, Inc.*,
    905 F.3d 106 (3d Cir. 2018) ............................................................... 22, 23, 24

*Institutional Inv'rs Grp. v. Avaya, Inc.*,
    564 F.3d 242 (3d Cir. 2009) ............................................................... 20, 22, 24

*James v. City of Wilkes-Barre*,
    700 F.3d 675 (3d Cir. 2012) ............................................................... 10

*Loos v. Immersion Corp.*,
    762 F.3d 880 (9th Cir. 2014) ............................................................... 25

*Lum v. Bank of Am.*,
    361 F.3d 217 (3d Cir. 2004 ............................................................... 10

*Martin v. GNC Holdings, Inc.*,
    757 Fed. Appx. 151 (3d Cir. 2018) ............................................................... 11, 20, 21

*Matrixx Initiatives, Inc. v. Siracusano*,
    131 S. Ct. 1309 (2011) ............................................................... 15

*McCabe v. Ernst & Young, LLP*,
    494 F.3d 418 (3d Cir. 2007) ............................................................... 25

*In re NAHC, Inc. Sec. Litig.*,
    306 F.3d 1314 (3d Cir. 2002) ............................................................... 13, 15

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
    135 S. Ct. 1318 (2015) ............................................................... 13, 19

*Oran v. Stafford*,
    226 F.3d 275 (3d Cir. 2000) ............................................................... 8, 11

*Rahman v. Kid Brands, Inc.*,
    736 F.3d 237 (3d Cir. 2013) ............................................................... 12, 22

*Shapiro v. UJB Fin. Corp.*,
    964 F.2d 272 (3d Cir. 1992) ............................................................... 25

*Slayton v. Am. Exp. Co.*,
    604 F.3d 758 (2d Cir. 2010) ............................................................... 14

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
    551 U.S. 308 (2007) ............................................................... *passim*

**Statutes and Other Authorities**

15 U.S.C. § 78j ............................................................... 11

ii

15 U.S.C. § 78t.................................................................................................... 12, 25

15 U.S.C. § 78u-4 ...........................................................................................*passim*

15 U.S.C. § 78u-5 ..................................................................................................14

17 C.F.R. § 240.10b-5(b) ................................................................................*passim*

Fed. R. Civ. P. 9(b) ...............................................................................................10

Fed. R. Civ. P. 12(b)(6) ......................................................................... 10, 11, 20, 26

## PRELIMINARY STATEMENT

In a carefully considered, 26-page opinion, the Court dismissed Plaintiff's consolidated complaint on March 31, 2019, concluding that the pleading failed to allege an actionable misrepresentation or scienter.  (D.E. 29).  The allegations in Plaintiff's Second Amended Consolidated Complaint (the "SAC") do not cure those pleading defects.  Instead, the redline comparison (D.E. 35) reveals that the vast majority of the amended pleading is verbatim the same.  The most significant change is that Plaintiff has *withdrawn* allegations about certain statements, but the statements Plaintiff continues to challenge are exactly the same as statements the Court already concluded are not actionable.  Additionally, even though some passages in the amended pleading appear to have been revised, the substance remains unchanged.  Other than adjusting for Plaintiff's withdrawn allegations, the Court could update the citations in its March 2019 opinion and reissue it.

The lack of material change calls for the same outcome—dismissal—for the same reasons.  Plaintiff still presents no allegations that any statements made were false at the time they were made.  Just as before, the pleading alleges that the American Society of Clinical Oncology ("ASCO") accepted three of Immunomedics' presentations for its 2016 annual conference.  Immunomedics' announcements of that fact were *true* when made.  Two of the presentations proceeded as planned, but ASCO cancelled one of them at the last minute, allegedly because that presentation's underlying data already had been presented in Boston in violation of ASCO's confidentiality policy.  Immunomedics announced the cancellation promptly and publicly, while stating its *belief* that the data for the ASCO presentation differed from the data presented in Boston.  As this Court already concluded, the challenged statements were true or inactionable statements of opinion.

Plaintiff further fails to present allegations supporting any inference of scienter, let alone the strong inference required by the Private Securities Litigation Reform Act.  Like the original, the SAC alleges that Immunomedics repeatedly and publicly *disclosed* the Boston conference. Immunomedics issued a press release describing the substance of that presentation, posted the presentation's visual slides on its website, and discussed the presentation with analysts on an earnings call.  As this Court already stated, that candor "totally undermine[s]" any possible claim that anyone was engaged in fraud.  (D.E. 29 at 23).

These failures are fatal and the SAC should be dismissed for the same reasons articulated in the Court's March 31, 2019 opinion dismissing the consolidated complaint (the "Opinion").

Plaintiff has known of the pleading deficiencies since Defendants first moved to dismiss well over a year ago, in January 2018.  (D.E. 25–1).  In that time, Plaintiff has done no more than withdraw allegations and change some wording without changing the substance—no more than shuffling deck chairs on the Titanic.  The Court should dismiss the SAC with prejudice.

## RELEVANT ALLEGATIONS[1]

The allegations remain substantively the same, and except for updated citations, this recitation is unchanged from Defendants' prior motion to dismiss brief.  (D.E. 25–1).

### A.    Background of Immunomedics and IMMU-132

Founded in 1982 by Defendant David M. Goldenberg, Immunomedics is a clinical-stage biopharmaceutical company located in Morris Plains, New Jersey.  (SAC, at ¶ 23, 31). Immunomedics is focused on "developing monoclonal antibody-based products for the targeted

---

[1]  The SAC refers and cites to—but does not attach thereto—information from Immunomedics' website and filings made by Immunomedics with the Securities and Exchange Commission ("SEC").  (*See, e.g.,* SAC, at 2, n.1; 11, n.2; 15, n.8;).  For completeness, Defendants attach as Exhibits 1-14 to the Declaration of B. John Pendleton, Jr. ("Pendleton Decl.") copies of these and other related publicly-available documents that the Court may consider.  (*See* Opinion at 19).

treatment of cancer, autoimmune disorders and other serious diseases." (Pendleton Decl., Ex. 1 (Immunomedics 2017 Form 10-K) at 2). Immunomedics currently has six clinical-stage product candidates in its pipeline. (*Id.*). Immunomedics' "most advanced product candidate" is sacituzumab govitecan, commonly referred to as "IMMU-132." (*Id.*, *see also* SAC, at ¶¶ 3, 34). IMMU-132 is an antibody-drug conjugate ("ADC") for the treatment of patients with solid cancers, meaning it is "designed to deliver a specific payload of a chemotherapeutic directly to the tumor while reducing overall toxic effects that are usually found with conventional administration of these chemotherapy agents." (Pendleton Decl., Ex. 1 at 2, 4, 5).

IMMU-132 is designed to treat three types of cancer: (1) Triple Negative Breast Cancer ("TNBC"); (2) Small-Cell Lung Cancer ("SCLC"); and (3) Non-Small Cell Lung Cancer ("NSCLC"). (*Id.* at 5). IMMU-132 received the "Breakthrough Therapy" designation from the Food and Drug Administration ("FDA") for patients with metastatic TNBC, and the FDA also granted "Fast Track designation" for patients with SCLC and NSCLC. (*Id.*).

**B.** **Timeline of Public Disclosures Regarding IMMU-132.**

ASCO is an organization whose mission is to "conquer[] cancer."[2] ASCO is comprised of 40,000 oncology professionals throughout the world, and it holds an annual conference to promote and share cancer breakthroughs. (*See*, *e.g.*, SAC, at ¶ 52). ASCO held its 2016 Annual Conference in Chicago, Illinois from Friday, June 3 through Tuesday, June 7. (*Id.* at ¶ 45). Immunomedics was scheduled to present as follows regarding IMMU-132 and TNBC, SCLC, and NSCLC:

- <u>Friday, June 3</u>:   Oral presentation regarding updated interim Phase 2 results in patients with metastatic **TNBC** in a Clinical Science Symposium Session.

- <u>Saturday, June 4</u>:  Poster session (non-oral presentation) regarding updated results in patients with metastatic **SCLC**.

---

[2]  *See* https://www.asco.org/about-asco/asco-overview.

- <u>Monday, June 6</u>: Oral presentation regarding updated results focusing on patients with metastatic **NSCLC** in another Clinical Science Symposium Session.

(Pendleton Decl., Exs. 6, 7).

In anticipation thereof, Immunomedics made the following public disclosures regarding IMMU-132 in April through June 2016 leading up to and during the 2016 Annual Conference:

**(1) April 19, 2016**. Immunomedics issued a press release announcing that IMMU-132 "produced meaningful clinical benefit in patients with relapsed or refractory metastatic urothelial cancer" (the "April 19 Press Release"). (SAC, at ¶ 71; *see also* Pendleton Decl., Ex. 2 at 1). The April 19 Press Release included the following statement by the President and Chief Executive Officer of Immunomedics, Defendant Cynthia L. Sullivan, regarding the 2016 Annual Conference:

> We are very encouraged by these results in metastatic urothelial cancer, which warrant a regulatory strategy similar to triple-negative breast cancer should these results continue to be robust"… Updated results in triple-negative breast and non-small-cell lung cancers will be presented at two Clinical Science Symposia during the upcoming ASCO Annual Meeting in June.

(*Id.*).

**(2) April 29, 2016.** Immunomedics issued a press release announcing that "objective durable responses have been achieved with sacituzumab govitecan, its lead antibody-drug conjugate (ADC), in a number of patients with advanced, metastatic solid cancers, after failing multiple prior therapies" (the "April 29 Press Release"). (SAC, at ¶ 72; *see also* Pendleton Decl., Ex. 3 at 1). The April 29 Press Release further stated that Dr. Goldenberg "was invited to present the updated, interim Phase 2 results" regarding IMMU-132 at PEGS Boston 2016 (the "Boston Presentation").[3] (Pendleton Decl., Ex. 3 at 1; *see also* SAC, at ¶ 72) (emphasis added). Dr.

---

[3] PEGS refers to the Essential Protein Engineering Summit. (*See* http://www.pegsummit.com). The PEGS Boston 2016 conference was held on April 25 through 29, 2016.

Goldenberg presented during the Boston Presentation certain results related to treatment responses for patients with metastatic TNBC, NSCLC, and SCLC.  (*Id.*).

(3)  **May 2, 2016.**  Immunomedics issued a press release announcing that its "abstract" on IMMU-132 regarding "patients with triple-negative breast cancer (TNBC) has been selected as part of the Best of ASCO Program, which features the top abstracts from this year's ASCO Annual Meeting for their practice changing research" (the "May 2 Press Release").  ( SAC, at ¶ 74; *see also* Pendleton Decl., Ex. 4).  The Best of ASCO Program was scheduled to occur in Chicago two weeks after the 2016 Annual Conference, on June 24 and 25, 2016.  (*Id.*).

(4)  **May 4, 2016.**[4]  Immunomedics filed a Form 10-Q for the quarterly period ended March 31, 2016 (the "2016 Q3 Form 10-Q") and issued an associated press release regarding its financial results for that quarter (the "May 4 Press Release").  (SAC, at ¶¶ 50, 78; *see also* Pendleton Decl., Exs. 5, 6).  The Form 10-Q, which was signed by Ms. Sullivan and Defendant Peter P. Pfreundschuh (Immunomedics' then-Chief Financial Officer), reiterated that certain updates regarding IMMU-132 were made at the Boston Presentation, as did the associated May 4 Press Release.  (Pendleton Decl., Ex. 5 at 43, 44, 109; Pendleton Decl., Ex. 6).

(5)  **May 19, 2016.**  Immunomedics issued a press release reiterating its presentations at the 2016 Annual Conference:

> [T]he Scientific Program Committee of the American Society of Clinical Oncology (ASCO) has selected two of the Company's abstracts for oral presentation at two Clinical Science Symposium Sessions during their 2016 Annual Meeting . . . .

---

[4]  Plaintiff also refers to statements made by Dr. Goldenberg and Ms. Sullivan during an earnings call on May 5, 2016, in which the contents of the 2016 Q3 Form 10-Q were discussed.  (*See* SAC, ¶¶ 80-83).  The alleged statements made therein are substantively similar to statements in both the May 4 Press Release and 2016 Q3 Form 10-Q, and will be subsumed in that analysis for efficiency purposes.

> The first abstract is a Late-Breaking Abstract on updated results from a Phase 2 study of the ADC in patients with metastatic TNBC. This abstract has also been selected as part of the Best of ASCO Program, which features the top abstracts from this year's ASCO Annual Meeting for their practice changing research.  Results in patients with metastatic non-small-cell lung cancer [NSCLC] will be updated in another Clinical Science Symposium Session that focuses on lung cancers.  In addition to these two oral presentations, a poster presentation of results with sacituzumab govitecan in patients with metastatic small-cell lung cancer will also be given.

(SAC, at ¶ 84; *see also* Pendleton Decl., Ex. 7).

(6)   __June 3, 2016.__  On the day Immunomedics was supposed to present on TNBC at the

2016 Annual Meeting, Immunomedics issued a press release stating as follows:

> Company was advised late yesterday that its abstract, "Therapy of refractory/relapsed metastatic triple-negative breast cancer (mTNBC) with an anti-Trop-2-SN-38 antibody-drug conjugate (ADC), sacituzumab govitecan (IMMU-132): Phase II results," planned for oral presentation today and selected by the American Society of Clinical Oncology (ASCO) for its Press Briefing, was cancelled because of a complaint that the Company violated the embargo by reporting results presented by its Chairman at a conference in April [at the Boston Conference].  It appears the complaint was made by a third party contacting ASCO.  No question was raised on the quality of the results.

(the "June 3 Press Release").  (SAC, at ¶ 90; *see also* Pendleton Decl., Ex. 8 at 1).  The June 3

Press Release further included a statement from Ms. Sullivan that Immunomedics was challenging

the decision by the ASCO:

> The presenter, Dr. [A. Bardia of Massachusetts General Hospital and Harvard Medical School], and I are attempting to reverse this with ASCO, *because we believe the patient population and results reported in April [at the Boston Conference] were different from those in the ASCO abstract submitted last February.*

(*Id.*) (emphasis added).

Each of the press releases was accompanied by cautionary language.  Specifically, the

following language was included at the end of each press release:

> This release… may contain forward-looking statements made
> pursuant to the Private Securities Litigation Reform Act of 1995.
> Such statements, including statements regarding clinical trials
> (including the funding therefor, outcomes, timing or associated
> costs)… involve significant risks and uncertainties and actual results
> could differ materially from those expressed or implied herein.
> Factors that could cause such differences include, but are not limited
> to, new product development (including clinical trials outcome and
> regulatory requirements/actions)… The Company is not under any
> obligation, and the Company expressly disclaims any obligation, to
> update or alter any forward-looking statements, whether as a result
> of new information, future events or otherwise.

(*See* Pendleton Decl., Exs. 2, 3, 4, 5, 7, 8).

Only the TNBC presentation did not go forward during the 2016 Annual Conference or subsequently at the "Best of ASCO" Presentation.  (SAC, at ¶¶ 90, 97).  However, the poster session on June 4, 2016 regarding SCLC, and the oral presentation regarding NSCLC on June 5, 2016, did proceed as contemplated and disclosed by Immunomedics.[5]  (Pendleton Decl., Ex. 9). ASCO subsequently published the same TNBC test results that were to be presented at its 2016 Annual Conference in a March 2017 edition of its official clinical journal, The Journal of Clinical Oncology.  (*See* Pendleton Decl., Ex. 10).

## C.    Dr. Goldenberg and Ms. Sullivan's Stock Transactions

The SAC alleges that Dr. Goldenberg and Ms. Sullivan sold a number of their shares of Immunomedics in June of 2015 and June of 2016.  (SAC, at ¶¶ 26, 29).  Dr. Goldenberg and Ms.

---

[5]  Accordingly, allegations regarding Immunomedics being "eject[ed]" or "kicked out" of the 2016 Annual Conference (*see* SAC, ¶¶ 90, 92) are false and should not been deemed as true given that Immunomedics proceeded with two of its three planned presentations.  *See Durant v. Horton*, No. 07-93(JAG), 2008 WL 2510661, at *2 (D.N.J. June 19, 2008) ("[I]f facts that are alleged to be true in a complaint are contradicted by facts that can be judicially noticed, the contradicted facts in the complaint are not deemed as true upon consideration of the motion to dismiss.") (internal quotation marks omitted).

Sullivan reported these sales on SEC Form 4s. (*Id.*; *see also* Pendleton Decl., Exs. 11, 12, 13, 14).[6]

Each of the transactions noted on the Form 4s took place shortly prior to the expiration of the stock

options that were granted to Dr. Goldenberg and Ms. Sullivan pursuant to the "Issuer's 2006 Stock

Incentive Plan." (*See* Pendleton Decl., Exs. 11 at 4 n.9, 12 at 3 n.9, 13 at 4 n.11, 14 at 3 n.11).

The SAC alleges that Dr. Goldenberg and Ms. Sullivan had not sold any Immunomedics shares

since they purchased them in March 4, 2009, but it does not allege that there was anything unusual

about the sales that took place in 2015 and 2016, does not allege the portion of stockholdings sold,

and omits the fact that the sales took place shortly before the stock options were set to expire. (*See*

SAC, at ¶¶ 25, 28).

*     *     *

The differences between the Consolidated Complaint and the SAC could not possibly

change the outcome. (D.E. 35). Plaintiff no longer alleges that the April 19 and April 29

statements were false or misleading. (*See id.* at ¶¶ 1, 71-73). Rather than establish any violation,

that concession confirms the Court's conclusion.

The SAC contains fewer mentions of the fact that Immunomedics had been selected for

*three* ASCO presentations and two of them (for SCLC and NSCLC) went forward as planned.

Despite the apparent effort to de-emphasize those allegations, they remain in the SAC, albeit

somewhat less prominently. (*See* SAC, at ¶¶ 71, 78, 80). Additionally, the SAC now includes

copy/pasted images of two documents that already were in the record as part of the prior motion

to dismiss: (1) a copy of ASCO's confidentiality policy (*see* SAC, at p. 25-26), which the prior

---

[6] "[Forms 4] are required SEC disclosures and may be considered for the truth of their contents." *In re Bear Stearns Cos., Inc. Secs., Derivative & ERISA Litig.*, 763 F. Supp. 2d 423, 583 (S.D.N.Y. 2011). The Court of Appeals for the Third Circuit held that in considering a motion to dismiss, a court may take judicial notice of public disclosure documents filed with the SEC. *Oran v. Stafford,* 226 F.3d 275, 289 (3d Cir. 2000).

consolidated complaint cited repeatedly and from which it quoted at length (*e.g.*, D.E. 15 ¶ 72); and (2) a portion of an ASCO article reporting certain results regarding IMMU-132 (SAC, at ¶ 98 at 51; D.E. 25-13).These materials add nothing, as they already were before the Court.  In other instances, Plaintiff has shuffled allegations between paragraphs or altered some language—but not in ways that substantively change the pleading.

## RELEVANT PROCEDURAL HISTORY

This action was initiated on June 9, 2016.  (D.E. 1).[7]  On August 8, 2016, competing motions were filed in this action to appoint lead plaintiff and lead counsel.  (D.E. 4, 5).  This Court, on February 7, 2017, appointed Mr. Sensung Tsai as lead plaintiff ("Plaintiff").  (D.E. 14). Plaintiff filed a Consolidated Complaint on October 4, 2017 (D.E. 15).  Defendants moved to dismiss the Consolidated Complaint.  (D.E. 25).

Judge Hayden dismissed the Consolidated Complaint on March 31, 2019.  (D.E. 29).  On May 30, 2019, Plaintiff filed the SAC.  (D.E. 33; D.E. 34 (Corrected Version, filed June 3, 2019); D.E. 35 (Redline Comparison, filed June 6, 2019)).  This Motion follows.

## STANDARD OF REVIEW

**A.     Standard of Review**

In determining whether a complaint states a cause of action sufficient to survive dismissal under Fed. R. Civ. P. 12(b)(6), the Court must "accept all well-pleaded allegations as true and draw all reasonable inferences in favor of the plaintiff." *City of Cambridge Ret. Sys. v.*

---

[7]  Four months later, on October 3, 2016, a shareholder derivative suit based on the same 2016 Annual ASCO Conference related disclosures was filed in the Superior Court of New Jersey, Chancery Division, Morris County.  *See Rosenfeld v. Goldenberg, et al.*, Docket No. MRS-L-2200-16.  An amended complaint was filed on October 13, 2017, and the defendants filed a motion to dismiss on December 4, 2017.  The motion to dismiss was granted on March 29, 2018.  Despite having leave to amend, the plaintiff neither amended nor took an appeal.

*Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018). "'[T]hreadbare recitals of the

elements of a cause of action, legal conclusions, and conclusory statements'" are all disregarded.

*Id.* at 878-79 (quoting *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012)). The

plaintiff's right to relief must be more than speculative; it must rise to the level of plausibility.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555

(2007). A claim meets the "plausibility" standard only if the factual allegations permit the Court

to "'draw the reasonable inference that the defendant is liable for the misconduct alleged.'"

*Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Claims under Section 10(a) and Rule 10b-5 must also meet the requirements of Fed. R.

Civ. P. 9(b), which requires fraud allegations to "'state with particularity the circumstances

constituting fraud or mistake,'" and the Private Securities Litigation Reform Act ("PSLRA"), 15

U.S.C. § 78u-4, which imposes heightened particularity requirements on the material

misrepresentation and scienter elements of these claims. *City of Cambridge Ret. Sys.*, 908 F.3d

at 879.

Although a court ruling on a Rule 12(b)(6) motion is generally confined to the pleadings,

the court may, without the need to convert the motion to one for summary judgment, consider

documents "'integral to or explicitly relied upon in the complaint,'" as well as "'undisputedly

authentic document[s] that a defendant attaches as an exhibit to a motion to dismiss if the

plaintiff's claims are based on the document.'" *In re Burlington Coat Factory Sec. Litig.*, 114

F.3d 1410, 1426 (3d Cir. 1997) (citations omitted); *Lum v. Bank of Am.*, 361 F.3d 217, 221 n.3

(3d Cir. 2004) ("In deciding motions to dismiss pursuant to Rule 12(b)(6), courts generally

consider only the allegations in the complaint, exhibits attached to the complaint, matters of

public record, and documents that form the basis of a claim."). The Court may also judicially

notice "properly-authenticated public disclosure documents filed with the SEC." *Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000); *see also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in a Section 10(b) action, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

### B.    Standard for Review of Exchange Act Claims

Section 10(b) prohibits the use of any "manipulative or deceptive device or contrivance" in contravention of SEC rules in connection with the purchase or sale of securities.  15 U.S.C. § 78j(b).  Rule 10b-5 prohibits, in pertinent part, making an "untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading."  17 C.F.R. § 240.10b-5(b).  The private right of action under these provisions "creates liability for false or misleading statements or omissions of material fact that affect trading on the secondary market." *Burlington*, 114 F.3d at 1417.

To state a claim for securities fraud under Section 10(b) and Rule 10b-5, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Martin v. GNC Holdings, Inc.*, 757 Fed. Appx. 151, 154 (3d Cir. 2018) (citing *Tellabs*, 551 U.S. at 322-23); *see also City of Cambridge Ret. Sys.*, 908 F.3d at 879.  The PSLRA requires, with regard to the "material misrepresentation" element, that the complaint "'specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading,'" and, as to any allegations made upon information and belief, "'all facts on which that belief is formed.'" *City*

*of Cambridge Ret. Sys.*, 908 F.3d at 879 (quoting 15 U.S.C. § 78u-4(b)(1)). As to scienter, the complaint must "'state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind.'" *Id.*  (quoting 15 U.S.C. § 78u-4(b)(2)(A)).  To adequately plead this element, the inference of scienter, or "defendant's intention 'to deceive, manipulate, or defraud,'" must be "more than merely plausible or reasonable – it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314.

Section 20(a) provides that persons who directly or indirectly control any person liable under the Exchange Act or rules promulgated under it is jointly and severally liable with the controlled person for violations of the act, unless the controlling person "acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action." 15 U.S.C. § 78t(a).  Put succinctly, "[l]iability under Section 20(a) 'is derivative of an underlying violation of Section 10(b) by the controlled person.'" *Biondolillo v. Roche Holding AG*, 2018 U.S. Dist. LEXIS 162858, at *18 (D.N.J. Sept. 24, 2018) (Thompson, J.) (quoting *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013)).  Accordingly, if no Section 10(b) violation has been adequately pleaded, the Section 20(a) claim also fails.  *Id.*

## LEGAL ARGUMENT

## I.     PLAINTIFF'S SECTION 10(B) AND RULE 10B-5 CLAIMS FAIL.

The SAC does not adequately allege the necessary elements to establish a violation of Section 10(b) or Rule 10b–5.  Specifically, no material misrepresentations or omissions were made, nor does Plaintiff satisfy the heightened pleading standard for scienter under the PSLRA.

### A.  Plaintiff Failed to Plead that Defendants Made Any Material Misrepresentations or Omissions.

To meet the first requirement of a claim under Section 10(b) and Rule 10b-5, a plaintiff must demonstrate that the defendant made a material misrepresentation or omission. *City of Cambridge Ret. Sys.*, 908 F.3d at 879.  This is an objective inquiry to be made from the perspective of a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015).  To be actionable a statement or omission must have been misleading at the time it was made, and liability cannot be imposed based on subsequent events. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002).

Plaintiff now concedes that the April 2016 statements are not actionable, and limits his complaint to certain May and June 2016 statements.  Those statements, however, are exactly the same as the May and June 2016 statements identified in the now-dismissed consolidated complaint.  As the Court already concluded, those statements were not false or misleading. (Opinion at 15).

#### 1.  The Statements Were True When Made

According to Plaintiff, all the challenged statements are statements of historic fact. Specifically, Plaintiff asserted that "[e]ach of the statements alleged to be false or misleading documents a historic fact.  Namely, Defendants submitted abstracts reporting updated IMMU-132 results to ASCO in February 2016 and ASCO accepted the abstracts for presentations." (D.E. 27 at 19 (citations omitted)). [8]  Each of those facts was true at the time of the May and June 2016

---

[8] Plaintiff's concession obviates the need to address whether the statements were forward-looking statements protected by the PSLRA's safe harbor.  To the extent Plaintiff no longer cabins his claims to statements of "historic fact," the safe harbor applies.  That is, to the extent any of the statements were *not* of historic fact, they were forward looking and accompanied by cautionary language.  The statements were forward-looking statements containing cautionary language subject to the PSLRA safe harbor.  As defined in the Reform Act, a forward-looking statement may address "the plans and objectives of management for future operations, including

statements—and remains true to this day. Immunomedics submitted abstracts to ASCO and ASCO accepted them.

In addition, there is no allegation that ASCO had, by the time of Defendants' statements on May 2, May 4, May 5, and May 19, decided that the TNBC presentation was cancelled, let alone informed Defendants of any cancellation. To the contrary, the complaint simply alleges that "by" June 3 – *i.e.*, after the statements made on the four dates above – ASCO had cancelled the TNBC presentation. (SAC, at ¶ 89). Without more, as previously held by Judge Hayden, these statements became "untrue" only *after* ASCO decided to exclude the TNBC presentation, and only to the extent they related to that presentation specifically. (Opinion at 16).[9]

Plaintiff contends, however, that Defendants knew when they made those statements that they had already disclosed the same data at the Boston presentation that was to be presented at ASCO, which violated the ASCO embargo and that there was consequently a risk that the ASCO presentations would be cancelled. (*See* SAC, at ¶¶ 77, 79, 83, 86, 88.). Plaintiff appears to be arguing that because Defendants did not include in their statements about the ASCO presentations

---

plans or objectives relating to the products or services of the issuer." 15 U.S.C. § 78u-5(i)(1)(B). Such statements are said to fall within the "statutory safe harbor" of the Reform Act and are not grounds for liability under Section 10(b). *In re Advanta Corp. Sec. Litig.,* 180 F.3d 525, 536 (3d Cir. 1999). A forward-looking statement is not actionable if it "is identified and accompanied by meaningful cautionary language *or* is immaterial *or* the plaintiff fails to prove that it was made with actual knowledge that it was false or misleading." *Slayton v. Am. Exp. Co.*, 604 F.3d 758, 766 (2d Cir. 2010). If a forward-looking statement later proves to be erroneous, there is no duty imposed by the Reform Act to update such a statement. *In re Advanta*, 180 F.3d at 536; 15 U.S.C § 78u-5(d) ("Nothing in this section shall impose upon any person a duty to update a forward-looking statement.").

[9] Despite making the sweeping allegation that Defendants were "ejected" or "kicked out" from the ASCO meeting (SAC, at ¶¶ 90, 92), Plaintiff cannot deny that Defendants' IMMU-132 presentations on SCLC and NSCLC proceeded as scheduled. (*See id.*; Pendleton Decl. Ex. 9 (June 6, 2016 press release, stating that NSCLC presentation was made)). Insofar as the challenged statements relate to those two presentations, then, there is, and can be, no argument that, when made, they were false or misleading or made material omissions concerning Defendants' then-anticipated presentations on NSCLC and SCLC.

that there was a risk, known to them, that the presentations would not happen, the statements were

misleading.  *See NAHC*, 306 F.3d at 1330 (defendants "not obligated to predict future events

unless there is reason to believe that they will occur").  However, these statements must be

assessed on the basis of reviewing the statements in their proper context.  *See In re Amarin Corp.*

*PLC Secs. Litig.*, 2016 U.S. Dist. LEXIS 55568, at *28 (D.N.J. Apr. 26, 2016) (Wolfson, J.)

(courts must examine statements in context to "determine whether they were indeed

misleading"), *aff'd*, 689 F. App'x 124 (3d Cir. 2017).  And neither Section 10(b) nor Rule 10b-5

imposes an affirmative duty to "'disclose any and all material information;'" to the contrary,

disclosure is required only when it is necessary to make the statements made, under the

circumstances in which they were made, not misleading.  *City of Edinburgh Council v. Pfizer,*

*Inc.*, 754 F.3d 159, 174 (3d Cir. 2014) (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct.

1309, 1321 (2011)).

Here, with the benefit of context, it cannot be plausibly inferred that the May 2, May 4,

May 5, or May 19 statements were misleading or suffered from an actionable omission.  (*See*

Opinion at 17).[10]  First, the SAC alleges no facts demonstrating that the statements were ever false,

even after the Boston presentation.  (*Id.*).  It simply proclaims that the specific data presented was

the same or "substantially" the same as what Immunomedics was to present at the ASCO meetings

(SAC, at ¶¶ 7, 9, 88), and, as support, offers only the fact of the June 3 TBNC presentation's

cancellation and an assertion that the Best of ASCO presentation of the TNBC abstract did not

proceed.  (Opinion at 17).  Those cancellations permit only a weak inference that the data were the

same, because it is undisputed that the other two ASCO presentations on SCLC and NSCLC did

---

[10] The June 3 statement similarly cannot be considered false or misleading.  Because the Court
previously found that statement to be an inactionable statement of opinion, Defendants will
address it here in that context (*See infra* p. 19).

proceed as scheduled. (*Id.*). The conclusion Plaintiff seeks to draw is especially implausible given

his allegation that Defendants knew about the ASCO embargo and the risk that ASCO would

cancel presentations that violated it. (*Id.*; *see also* SAC, at ¶¶ 66-68). As the Court already

noted, assuming the truth of this allegation, Defendants' multiple disclosures of the Boston

presentation in April and May 2016, only make sense if the data were *not* the same as what they

intended to present at ASCO. (Opinion at 17; *see also* SAC, at ¶¶ 72, 78).

But even if the data in the Boston presentation were exactly the same as the data

Defendants expected to present at the ASCO meetings, Judge Hayden found that it is not

plausible to conclude that the challenged statements were misleading for failure to disclose that

information. (Opinion at 17). The SAC allegations and documents properly considered on this

motion to dismiss make clear that Defendants did contemporaneously disclose the fact and

contents of the PEGS Boston presentation – the very circumstances that Plaintiff claims would

violate the ASCO embargo and put Defendants' ASCO presentations at risk – and did so

repeatedly, sometimes at the same time they made statements about the expected ASCO

presentations. (*Id.* at 17-18). A little over a week after the April 19 press release, Immunomedics

issued the April 29 press release, discussing treatment responses concerning IMMU-132, and

stating that Dr. Goldenberg had been invited to PEGS Boston 2016 "to present the updated,

interim Phase 2 results" at the conference, "which is taking place at The Seaport World Trade

Center in Boston, MA." (Pendleton Decl., Ex. 3; SAC, at ¶ 72 (discussing press release)). The

press release went on to summarize the treatment responses achieved for TBNC, NSCLC, and

SCLC – the three indications as to which the company's three IMMU-132 presentations at

ASCO were to be made – as well as for urothelial cancer. (Pendleton Decl., Ex. 3).

To the extent that Plaintiff argues that Defendants' May 2016 statements about the ASCO presentations and the updated data they expected to present were misleading because they did not specifically say that the April 29 presentation jeopardized the ASCO presentations, the April 29 press release itself disclosed the information a reasonable investor would need to reach that conclusion.  (Opinion at 18).  Plaintiff contends that the April 29 press release itself was problematic, and presumably did not serve this informational function, because it did not state that the data therein were "the same TNBC 'updated results' that had been accepted and that they intended to present at the upcoming ASCO meetings."  (SAC, at ¶ 72).  But, again, the SAC's bald assertions are insufficient to permit the inference that the information *was* in fact the same.  (Opinion at 18).[11]

Additionally, the May 4 press release does not only state that "[k]ey updates in [TNBC], as well as non-small-cell and small-cell lung cancers will be provided at ASCO next month" and that "[u]pdated Phase 2 results in patients with metastatic [TNBC] will be presented in a Clinical Science Symposium Session at the 2016 [ASCO] Annual Meeting on Friday, June 3, 2016."  (Pendleton Decl., Ex. 5)  It also says, immediately before the latter statement, that "[d]urable objective responses with sacituzumab govitecan in a number of patients with advanced, metastatic solid cancers, after failing multiple prior therapies, some including checkpoint inhibitors, *were*

---

[11] In the SAC, Plaintiff selectively quoted one brief notation from a multi-page scientific article, claiming that the one paragraph demonstrates that the data presented in Boston in April 2016 was the same as the ASCO data.  That paragraph identifies the April 2016 Boston presentation as one of several "prior presentations" regarding IMMU-132, along with an earlier Boston presentation that took place in 2015 and also a presentation in San Antonio, Texas.  That article was in the record previously (D.E. 25–13) and Plaintiff did not make this argument before.  The parts of the article not quoted demonstrate that the IMMU-132 study collected data over a period of years and continued collecting data *after* the April 2016 Boston PEGS conference.  Specifically, the article states that the "data cutoff" was in August 2016.  Thus, rather than support Plaintiff's inference that the Boston PEGS data and the ASCO data were the same, the document in reality confirms that new data was available.

*reported at PEGS Boston 2016.*"  (*Id.* (emphasis added)); *see City of Edinburgh Council*, 754 F.3d at 169 (statements are to be examined in full context of the documents in which they are found (citing *Burlington*, 114 F.3d at 1426)).  Similarly, another contemporaneous document, this one a judicially-noticeable SEC filing (a different part of which is excerpted in the SAC (¶ 50)), further undermines Plaintiff's argument.  Immunomedics filed a Form 10-Q with the SEC on May 4, 2016, in which it stated that "Results in TNBC, NSCLC, and SCLC were updated by Dr. David M. Goldenberg who was invited to present at PEGS Boston 2016 in April."  (Pendleton Decl., Ex. 6, at 645).  The filing then proceeded to summarize the data presented in Boston, mirroring the content of the April 29 press release.  (*Id.* at 647).  The SAC itself also alleges several other disclosures of the Boston presentation prior to the ASCO cancellation: Defendants' publication of the presentation on the Immunomedics website and their discussion of the data with securities analysts on the May 5 call.  (SAC, at ¶¶ 9, 88).

All of these documents (which the Court already determined it may properly consider in deciding Defendants' motion to dismiss), coupled with Plaintiff's own allegations, undermine Plaintiff's argument that the statements made on May 2, May 4, May 5, and May 19 were actionably false or misleading or made material omissions.  (Opinion at 19-20).  Plaintiff's argument appears to be that Defendants should have specifically said, every time they touted their ASCO meeting participation, that the company might *not* make those presentations because Defendants had violated the rules for participation.  (*Id.*).  But, in view of the SAC's other allegations and the contemporaneous disclosures that Defendants made, this argument remains as unpersuasive now as it was the first time Plaintiff made it.  (*Id.*).

### 2.   The Statements Were Inactionable Statements of Opinion

Similarly, Judge Hayden already found that the statement Plaintiff challenges in the June 3, 2016 press release is not actionable.  (Opinion at 20).  In that press release, which announces

ASCO's cancellation of Defendants' TNBC presentation, Ms. Sullivan stated that they were attempting to reverse the decision, and that "*we believe* the patient population and results reported in April were different from those in the ASCO abstract submitted last February." (SAC, at ¶¶ 90; Pendleton Decl., Ex. 8). Statements of opinion are generally not actionable, unless they qualify for an exception. *City of Edinburgh Council*, 754 F.3d at 170 ("Opinions are only actionable under the securities laws if they are not honestly believed and lack a reasonable basis."); *see also Omnicare*, 135 S. Ct. at 1328-29. The SAC simply asserts, without any factual allegations other than the cancellation itself, that the data in the April presentation were identical to the data to be presented at the June ASCO TNBC presentation. (Opinion at 20).

Moreover, as with the earlier statements, the development that that Defendants did not end up presenting the TNBC abstract at Best of ASCO in late June 2016 does not render the belief expressed in the June 3 press release retroactively false or misleading. *See Amarin*, 2016 U.S. Dist. LEXIS 55568, at *60 (even if a speaker was "ultimately wrong in his beliefs is not a basis, by itself, to bring a claim under Section 10(b)"). And like the prior complaint, the SAC alleges no facts regarding the reasons or circumstances for Defendants' failure to present at Best of ASCO from which the Court could infer that the June 3 statement represents an actionable misrepresentation or omission. (*See* Opinion at 21).

Plaintiff has added no allegations that change the content of the statements that were previously evaluated by the Court – the statements are still not actionable misrepresentations or omissions. Thus, the result should be the same. Plaintiff's claim pursuant to Section 10(b) and Rule 10b-5 should be dismissed.

### B.    Plaintiff Failed to Plead Scienter.

Even if Plaintiff had adequately pleaded the first element of a claim under Section 10(b) or Rule 10b-5, the claim again must fail, because the SAC fails to plead scienter, just as Judge

Hayden found when evaluating the consolidated complaint. (*See* Opinion at 21). The PSLRA imposes a "scienter pleading requirement [that] is a significant bar to litigation." *Globis Capital Partners, L.P. v. Stonepath Grp., Inc.*, 241 F. App'x 832, 836 n.1 (3d Cir. 2007). It "alters the normal operation of inferences under Rule 12(b)(6)," *In re Digital Island Sec. Litig.*, 357 F.3d 322, 328 (3d Cir. 2004), by requiring a complaint "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2) (emphasis added). In other words, it is insufficient under the PSLRA merely to allege "acts from which an inference of scienter rationally could be drawn," instead requiring facts that are "cogent and compelling." *Tellabs*, 551 U.S. at 323-24. When a complaint alleges fraudulent omissions, as the SAC does here, "it is especially important to rigorously apply the standard for pleading intent." *In re GeoPharma, Inc. Sec. Litig.*, 411 F. Supp. 2d 434, 437 (S.D.N.Y. 2006).

To survive a motion to dismiss, moreover, the allegations must give rise to a strong inference of "reckless or conscious behavior." *Martin*, 757 F. App'x at 153-54 (citing *Institutional Inv'rs Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)). A "reckless" statement requires far more than negligence. *Id.* It requires "'an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the action must have been aware of it.'" *Id.* (quoting *Avaya*, 564 F.3d at 267 n.42).

A "strong" inference of scienter must be "more than merely plausible or reasonable;" it must be "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The inquiry is whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23.

         1.        **The repeated disclosure of the Boston presentation "totally undermines" any inference of scienter.**

The SAC falls far short of the scienter standard.  (*See* Opinion at 22).  In comparison to inferences favoring Plaintiff (if any), the "'plausible, non-culpable explanations for the defendant's conduct'" are far more compelling.  *Martin*, 757 F. App'x at 154 (quoting *Tellabs*, 551 U.S. at 324).  As Judge Hayden wrote regarding the consolidated complaint:

> Against the inference Tsai wishes to draw . . . is the factual assertion, which appears multiple times in the complaint itself, that ***defendants disclosed the Boston presentation***.  If defendants believed that the content of the Boston presentation would disqualify them from presenting at the ASCO meetings -- that is, if they made their statements about ASCO participation and their expectation of providing updated results at that conference with an "intent to deceive, manipulate, or defraud" investors into believing the presentations would happen when they would not – their repeated disclosures of the Boston presentation and at least some of its content would ***totally undermine*** that alleged scheme.

(Opinion at 22-23) (emphases added).  Those disclosures—all publicly made in press releases, SEC filings, and on a call with analysts—still "appear multiple times in the [SAC] itself."  *Id.*

The SAC alleges that when Dr. Goldenberg presented at PEGS in Boston in April 2016, the company issued a press release correctly stating he had presented "interim" data, and immediately put Dr. Goldenberg's presentation slides on the company's own website.  (SAC, at ¶¶ 9, 72, 88, 92).  The data he had presented were made available for all to see – including anyone at ASCO.  (*Id.*).  ASCO could have reviewed all that data any time on or after April 29, 2016.  If Immunomedics had wanted to manipulate its stock price for the next five weeks, it would not have made public, and thus available to ASCO, the very data on which ASCO – at any time – could base a decision to cancel the TNBC presentation.  Defendants made public exactly what one would expect them to hide if they truly had intended to deceive the market.  (*See*

Opinion at 23).  The company's transparency about the Boston presentation data cuts strongly against any inference of scienter.

Indeed, as the Court already has recognized, if Defendants believed their presentation at the Boston conference would "jeopardize the company's participation in the prestigious ASCO meetings, it is hard to imagine why they would have participated in the Boston event, much less make multiple public disclosures about that participation."  (*Id.*).

### 2.   There are no plausible allegations of any motive to defraud.

In addition, there was no motive or opportunity for Defendants to commit fraud. "Demonstrating that a defendant had a motive, such as personal financial gain, to commit a securities fraud violation is a 'relevant consideration'" that may weigh in favor of a scienter inference.  *Hertz*, 905 F.3d at 119 (quoting *Tellabs*, 551 U.S. at 325).  But motives "'generally possessed by most corporate directors and officers do not suffice; instead, plaintiffs must assert a concrete and personal benefit to the individual defendants resulting from this fraud.'"  *Rahman*, 736 F.3d at 245-46 (quoting *Avaya*, 564 F.3d at 278); *see also Avaya*, 564 F.3d at 279 ("Corporate officers always have an incentive to improve the lot of their companies, but this is not, absent unusual circumstances, a motive to commit fraud.").  As to Mr. Pfreundschuh, the SAC does not even purport to allege any such motive.  (*See* Opinion at 25).

Instead, the SAC (like the consolidated complaint) focuses on certain stock sales of Dr. Goldenberg and Ms. Sullivan, but the law is clear: mere sales of stock by an insider do not compel an inference of scienter.  *In re Hertz Global Holdings, Inc.*, 905 F.3d 106, 119 (3d Cir. 2018).  Here, the stock sales cut *against* an inference of scienter because they took place between June 6 and 13 – *after* Immunomedics publicly revealed that ASCO had cancelled the TNBC presentation and *after* that presentation would have taken place on June 3 had it not been

cancelled.[12]  (*See* SAC, at ¶ 94).  The SAC, like the consolidated complaint before it, "fails to explain why, if Sullivan and Goldenberg had known all along that their participation in ASCO's meeting was in jeopardy, they would wait until after that risk came to fruition to sell their stock—at prices well below their trading high on June 2."  (Opinion at 24 (citing *In re* Hertz, 905 F.3d at 120); *see also* SAC, at ¶ 12 (stock sales took place at more than a dollar below the pre-cancellation high)).[13]  Had Dr. Goldenberg or Ms. Sullivan intended to sell at an inflated price, surely they would have done so before the announcement on June 3, 2016, that the TNBC presentation would not occur.  *In re Hertz*, 905 F.3d at 120 (declining to draw scienter inference when defendants sold shares below stock's class period high).[14]

Additionally, the SAC alleges nothing about the impact of those sales on Dr. Goldenberg's or Ms. Sullivan's holdings or the relation of that amount to their overall compensation.[15]  That is because there was none: according to the publicly filed SEC Form 4s – which are referenced in

---

[12] If Dr. Goldenberg and Ms. Sullivan were trying to trade on insider knowledge, at the very least, they would have had to have done so before the scheduled presentation.  If the presentation had gone forward on June 3, the world would have absorbed all the data from the presentation, and compared it to the already public data from the PEGS presentation.  If Plaintiff's position were correct that the data were the same (they were not), the market would have already adjusted by the time of Dr. Goldenberg and Ms. Sullivan's stock sales.

[13] Plaintiff alleges that the company's failure to present its TNBC abstract at Best of ASCO in late June is another key milestone, and that the stock sales preceded that development, but Plaintiff fails to explain why, if Ms. Sullivan and Dr. Goldenberg had known all along that their participation in ASCO's meeting was in jeopardy, they would "wait until after that risk came to fruition to sell their stock." (Opinion at 24).

[14] The timing of these sales is unremarkable for another reason: the sales took place as part of an exercise of stock options pursuant to Immunomedics' long-established stock incentive plan.  (*See* Pendleton Decl., Exs. 11 at 4 n.9, 12 at 3 n.9, 13 at 4 n.11, 14 at 3 n.11 (SEC Form 4s)).  Thus, the options expiration date had been set *years earlier*, well before the events in the SAC.  (*Id.*).

[15] Factors that may matter include whether the transactions were unusual in scope or timing, the amount of profit made and stock traded, how much of the insider's holdings were sold, how many insiders participated, and whether the profits were "substantial" in relation to the insider's typical compensation.  *In re Hertz*, 905 F.3d at 119 (citations omitted).

the SAC (*see* SAC, at ¶ 25) – the stock sales took place as part of what is known as a "cashless exercise" of stock options, involving offsetting purchases and sales.[16]   (*See* Pendleton Decl., Exs. 11, 12, 13, 14 (SEC Form 4s)).  The transactions did not reduce Dr. Goldenberg and Ms. Sullivan's Immunomedics holdings at all—but rather *maintained* them.  (*Id.*).  Courts have refused to infer scienter even when insiders substantially *reduced* their holdings.  *See Avaya*, 564 F.3d at 279 (17.7 percent reduction in ownership); *In re Hertz*, 120–21 (no inference of scienter despite selling over 60 percent of holdings when timing not unusual).  Here, Dr. Goldenberg and Ms. Sullivan *maintained* their holdings – and remained among the largest of Immunomedics' stockholders – undermining any inference of scienter Plaintiff may wish to draw.

As this Court already has determined, the non-culpable motivations for Immunomedics to promote its forthcoming presentation at ASCO are far more compelling.  ASCO's annual meetings are among "the largest and most prominent cancer conferences in the world," where "attendees show up to share ideas and learn about cancer breakthroughs from therapies and diagnostics."  (SAC, at ¶¶ 5, 52).  As a company "dedicated to novel immunotherapeutics for the treatment of cancer," (SAC, at ¶ 2), participating at ASCO would be a significant benefit.  Immunomedics and its senior executives – with lengthy careers in the industry and extensive stock holdings in the company – had no incentive to place any of the three ASCO presentations at risk.  Rather, participating at ASCO (and announcing that participation publicly) is exactly what one would expect of a company researching new cancer therapies and – as Plaintiff alleges – searching for a licensing partner.  (SAC, at ¶ 53).  As the Court already concluded, the "inference that defendants made the statements about their ASCO participation for legitimate business

---

[16] In the transaction, stock was sold to cover the strike prices and taxes incurred in exercising Dr. Goldenberg and Ms. Sullivan's expiring stock options.  (*See* Pendleton Decl., Exs. 11, 12, 13, 14).

reasons, and not with the intent to defraud . . . is far more likely than the one Plaintiff wishes to draw.  (*Id.*).

The Court should dismiss the Section 10(b) and Rule 10b-5 claim for lack of scienter.

## II.   PLAINTIFF'S SECTION 20(A) CLAIM SHOULD BE DISMISSED.

Section 20(a) of the Exchange Act creates liability for "controlling persons."  15 U.S.C. § 78t(a).  Because a plaintiff must allege a primary violation of federal securities laws to prevail on a Section 20(a) claim, "once all predicate § 10(b) claims are dismissed, there are no allegations upon which § 20(a) liability can be based."  *Shapiro v. UJB Fin. Corp.*, 964 F.2d 272, 279 (3d Cir. 1992); *see also City of Edinburgh Council*, 754 F.3d at 177 ("Because the Funds have failed to adequately plead a predicate section 10(b) claim, their section 20(a) claim must be dismissed.").

The Court previously found that Plaintiff "has failed to plead successfully a predicate violation of Section 10(b), Rule 10b-5," and the Section 20(a) claim should therefore be dismissed as a matter of law.  (*See* Opinion at 25).  Because the allegations have not changed in any material way, the Section 20(a) claim should be dismissed for the same reasons cited in the Opinion.[17]

## CONCLUSION

For the foregoing reasons, the Second Amended Complaint should be dismissed in its entirety pursuant to Fed. R. Civ. P. 12(b)(6) with prejudice.

---

[17] In addition, Plaintiff fails to plead loss causation because he has not alleged that the alleged misrepresentation or omission "was a substantial factor in causing a decline in the security's price, thus creating an actual economic loss for the plaintiff."  *McCabe v. Ernst & Young, LLP*, 494 F.3d 418, 425-26 (3d Cir. 2007).  "In other words, the plaintiff must plausibly allege that the defendant's fraud was revealed to the market and caused the resulting loss." *Loos v. Immersion Corp.*, 762 F.3d 880, 887 (9th Cir. 2014).  A mere allegation of unproven conduct and the market's subsequent speculation regarding potential fraud does not qualify as a corrective disclosure, and is insufficient to support loss causation.  *See, e.g.*, *id.* at 890.

Dated: July 2, 2019

Respectfully submitted,

s/ B. John Pendleton, Jr.
B. John Pendleton, Jr.
**DLA PIPER LLP (US)**
51 John F. Kennedy Parkway, Suite 120
Short Hills, New Jersey 07078
Tel.:   (973) 520-2561
john.pendleton@dlapiper.com

*Attorneys for Defendants Immunomedics, Inc. and Peter P. Pfreundschuh*

s/ Albert H. Manwaring, IV
Albert H. Manwaring, IV
**Morris James LLP**
500 Delaware Avenue, Suite 1500
Wilmington, Delaware 19801
Tel.:   (302) 888-6868
AManwaring@morrisjames.com

Robert A. Van Kirk
(to be admitted *pro hac vice*)
**Williams & Connolly LLP**
725 Twelfth Street, N.W.
Washington, DC 20005
Tel.:   (202) 434-5163
rvankirck@wc.com

*Attorneys for Defendants David Goldenberg and Cynthia L. Sullivan*