<u>NOT FOR PUBLICATION</u>

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| JESSICA FERGUS, individually and on behalf of all others similarly situated,<br><br>    *Plaintiff*,<br><br>  v.<br><br>IMMUNOMEDICS, INC., CYNTHIA L. SULLIVAN, PETER P. PFREUNDSCHUH AND DAVID GOLDBERG,<br><br>    *Defendants*. | Civil No.: 16-cv-3335 (KSH) (CLW)<br><br><br><u>OPINION</u> |

**Katharine S. Hayden, U.S.D.J.**

### I. <u>Introduction</u>

  Defendants Immunomedics, Inc., Cynthia L. Sullivan, Peter P. Pfreundschuh, and David Goldenberg have moved to dismiss the second amended consolidated complaint of plaintiff Sensung Tsai in this putative class action brought under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder. The motion is fully briefed, and the Court decides it without oral argument. *See* L. Civ. R. 78.1.

### II. <u>Background</u>

  Tsai's now-operative second amended complaint (D.E. 34, SAC) followed the Court's March 31, 2019 opinion and order dismissing the consolidated complaint. (*See* D.E. 29 (March 31 Opinion), 30 (March 31 Order).) Familiarity with the Court's prior ruling is presumed. In brief, Tsai alleged in the consolidated complaint that Immunomedics, a biopharmaceutical company, and three of its now-former executives made false and misleading statements between April 19, 2016, and May 19, 2016, about their anticipated participation in a 2016 industry conference in an effort to increase the company's stock price, locate a licensing partner, and reap

the resulting profit. Tsai asserted that defendants' conduct violated Sections 10(b) and 20(a) of the Exchange Act, as well as Rule 10b-5. Defendants moved to dismiss the consolidated complaint under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief may be granted and under Fed. R. Civ. P. 9 for failure to plead fraud with particularity, and the Court agreed that the complaint was deficient: in its March 31, 2019 opinion, the Court concluded that the consolidated complaint failed to adequately plead material misrepresentations or omissions or the existence of scienter, both of which are required elements of Tsai's Section 10(b) and Rule 10b-5 claim. Because that claim failed, the Section 20(a) claim also required dismissal. The Court granted Tsai 30 days to file an amended complaint, and granted an additional 30-day extension upon his counsel's request (D.E. 32).

The second amended complaint was filed on May 30, 2019 (D.E. 33), and a "corrected" version was filed on June 3, 2019 (D.E. 34).[1] Tsai continues to allege that defendants made materially false statements and omissions concerning Immunomedics' anticipated presentation of updated data on a key cancer drug candidate (called sacituzumab govitecan, or IMMU-132) at the 2016 ASCO conferences, but limits his challenge to statements made after defendants' presentation at a Boston industry conference in April 2016, and to the aspects of the statements that concerned the presentation of results pertaining to IMMU-132's use for triple-negative breast cancer (TNBC). He alleges, more specifically, that on May 2, 4, 5, and 19, 2016, defendants made statements touting their then-upcoming presentation of updated TNBC results at the ASCO conference on June 3, 2016, and the Best of ASCO conference on June 24-25,

---

[1] The initial complaint was filed on June 9, 2016 (D.E. 1), and after Tsai was appointed lead plaintiff, he filed the consolidated complaint (D.E. 15). Thus, the operative complaint is the third one filed in this action, explaining plaintiff's use of "second amended" to describe it.

2016. (SAC ¶¶ 4, 45, 74, 78, 80-81, 84, 109, 115.)[2] But, Tsai alleges, defendants presented the same TNBC data at an industry conference in Boston on April 29, 2016; no new information would be presented at the ASCO programs and the company risked exclusion due to ASCO's confidentiality and non-disclosure requirements. (*Id.* ¶¶ 9, 66-67, 72-73.) Defendants knew this, Tsai continues, and concealed or failed to disclose it, and the statements the company made throughout May 2016 were false and misleading. (*Id.* ¶¶ 65-68, 72-73, 77, 79, 83, 86, 88, 116, 118.)

Ultimately, ASCO cancelled the June 3 TNBC presentation because its confidentiality policy had been violated. (*Id.* ¶¶ 10, 89-90.) Defendants issued a press release on June 3, 2016, acknowledging the cancellation, but contended ASCO was wrong and that Sullivan and the presenter, Dr. Bardia, were trying to reverse the decision because they believed the results were different than what the company reported in April. (*Id.* ¶¶ 11-12, 90.) According to Tsai, these statements were also false and misleading because the data was not different, Dr. Bardia did not know about the prior presentation, and the press release implied there was still a basis for the company to present at the Best of ASCO program on June 24, 2016. (*Id.* ¶ 91.)

After that statement—but before the Best of ASCO program—Goldenberg and Sullivan sold a large number of shares in the company, only the second sales they made since acquiring the shares in 2009, and the sale was made at a time when their statements would be expected to have maximum effect on the share price. (*Id.* ¶¶ 17, 45-46, 94, 117.) On June 25, 2016, the Best of ASCO program concluded, with no presentation by defendants and no explanation from them. (*Id.* ¶¶ 12, 97.) ASCO's website indicated that the company's abstract had been retracted for

---

[2] The second amended complaint continues to point to the company's April 19, 2016 press release announcing its presentation of updated TNBC results at the then-upcoming ASCO meeting (*see, e.g.*, *id.* ¶ 71), but no longer relies on it as a basis for Tsai's claims.

3

violation of ASCO's confidentiality policy.  (*Id.* ¶ 98.)  Although the complaint appears to admit that ASCO ultimately published the abstract at a later date, it also alleges that the authors cited the April 2016 Boston event as a "prior presentation" of the information in the abstract, framing it as an admission.  (*Id.*)   The complaint asserts that defendants' statements resulted in an artificially inflated share price that dropped once the truth – that there was no new data – was revealed, harming investors.  (*Id.* ¶¶ 11-12, 17, 76, 82, 85-87, 93, 97, 99, 109-110.)

Defendants have moved to dismiss, arguing that the amendments fail to correct the deficiencies in the prior complaint.  (*See* D.E. 41 (Moving Br.); D.E. 50 (Reply Br.).)  Tsai counters that the second amended complaint now "hones in on and establishes" defendants' purported fraud.  (D.E. 49 (Opp. Br.) at 1.)

### III.     Legal Standard

#### A.  Standard of Review

In assessing whether the complaint survives dismissal under Rule 12(b)(6), the Court must accept all well-pleaded allegations as true, draw all reasonable inferences in plaintiff's favor, reject threadbare recitals of claim elements, legal conclusions, and conclusory statements, and determine whether the complaint pleads a plausible claim for relief.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007); *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 878 (3d Cir. 2018).  A claim is "plausibly" pleaded if the factual allegations permit "'the reasonable inference that the defendant is liable for the misconduct alleged.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Claims under Section 10(b) and Rule 10b-5 must also meet the requirements of Fed. R. Civ. P. 9(b), which requires fraud allegations to "'state with particularity the circumstances

4

constituting fraud or mistake,'" and the heighted particularity requirements of the Private Securities Litigation Reform Act (PSLRA), 15 U.S.C. § 78u-4. *City of Cambridge Ret. Sys.*, 908 F.3d at 879. And, as the Court observed in its prior ruling, the motion record is generally confined to the pleadings, with limited exceptions. *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). *See also Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007) (in a Section 10(b) action, courts "must consider the complaint in its entirety, as well as other sources courts ordinarily examine when ruling on Rule 12(b)(6) motions to dismiss, in particular, documents incorporated into the complaint by reference, and matters of which a court may take judicial notice").

### B. Standard for Review of Exchange Act Claims

Section 10(b) and Rule 10b-5 impose liability for "false or misleading statements or omissions of material fact that affect trading on the secondary market." *Burlington*, 114 F.3d at 1417; *see also* 15 U.S.C. § 78j(b) (prohibiting use of any "manipulative or deceptive device or contrivance" in contravention of SEC rules in connection with the purchase or sale of securities); 17 C.F.R. § 240.10b-5(b) (prohibiting the making of an "untrue statement of a material fact or . . . omit[ting] to state a material fact necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading"). To state a claim under these provisions, a plaintiff must allege "(1) a material misrepresentation or omission; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Martin v. GNC Holdings, Inc.*, 757 F. App'x 151, 153 (3d Cir. 2018); *see also City of Cambridge Ret. Sys.*, 908 F.3d at 879.

Section 20(a) holds controlling persons jointly and severally liable with the controlled person for violations of the act, unless the controlling person "acted in good faith and did not directly or indirectly induce the acts constituting the violation or cause of action." 15 U.S.C. § 78t(a). Section 20(a) liability is derivative of a Section 10(b) violation by the controlled person. *Rahman v. Kid Brands, Inc.*, 736 F.3d 237, 247 (3d Cir. 2013).

## IV. Discussion

Defendants continue to maintain that Tsai's claim under Section 10(b) and Rule 10b-5 fails to adequately allege a material misrepresentation or omission and scienter.[3] However, as set forth below, the second amended complaint has addressed the prior deficiencies in the pleading of these requirements.

### A. Section 10(b) and Rule 10b-5 Claim

#### 1. Material Misrepresentations or Omissions

Claims under Section 10(b) and Rule 10b-5 require a material misrepresentation or omission. *City of Cambridge Ret. Sys.*, 908 F.3d at 879. The Court previously concluded that Tsai had not plausibly pleaded this element because (1) the complaint did not allege facts permitting an inference that the challenged statements were false or misleading when made, and (2) the statement in the June 3, 2016 press release was non-actionable opinion. The second amended complaint makes a subtle, but consequential, modification to the framing of the claims: it alleges that the challenged statements were allegedly false and misleading not necessarily because they represented that defendants would be making presentations at ASCO without

---

[3] Defendants do not challenge the pleading of the remaining claim elements, aside from an argument made in passing (to which plaintiff fails to respond) that the complaint fails to plead loss causation. Given the cursory treatment of this complex issue in the motion briefing and the allegations in the complaint linking changes in the company's share price to the challenged statements and subsequent developments, the complaint will not be dismissed on this basis.

6

disclosing that those presentations were at risk of cancellation, but because they signaled that the company had new, updated TNBC data to present – a precondition to presenting at ASCO – when it didn't. (*See* Opp. Br. 1, 5, 7.) In other words, it was not the risk of exclusion from ASCO that Tsai believes defendants had an obligation to disclose and that caused the company's share price to be artificially inflated during the class period; it was that no new data would be presented at those conferences.

As the Court previously recognized, whether a statement is misleading must be evaluated in context. *See In re Amarin Corp. PLC Secs. Litig.*, 2016 U.S. Dist. LEXIS 55568, at *28 (D.N.J. Apr. 26, 2016) (Wolfson, J.), *aff'd*, 689 F. App'x 124 (3d Cir. 2017); *see also Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27, 44 (2011). The analysis is an objective one to be made from the perspective of a reasonable investor. *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 135 S. Ct. 1318, 1327 (2015). Although Section 10(b) and Rule 10b-5 "do not create an affirmative duty to disclose any and all material information," disclosure is required "when necessary 'to make . . . statements made, in the light of the circumstances in which they were made, not misleading.'" *Matrixx*, 563 U.S. at 44 (quoting 17 CFR § 240.10b-5(b)).

Here, the complaint alleges that ASCO's policy requires those submitting abstracts for presentation at its conferences to adhere to its confidentiality policy. (SAC ¶ 66.) Abstract authors, research sponsors, journalists, and others are prohibited from, among other things, making the information public, publishing or presenting the information, and using the information to trade in the securities of an issuer. (*Id.*) Disclosure of data before the meeting renders the abstract subject to rejection or removal unless an exception applies, and no exception has ever been granted. (*Id.* at ¶¶ 66-67.) This policy is posted on ASCO's website and is known

7

to presenters and investors, the latter of which are attracted to the stocks of companies that announce ASCO-accepted abstracts based on the prospect of the company drawing other investors or "suitors" with the results they intend to announce.  (*Id.* ¶¶ 53, 66.)  Against this backdrop, therefore, a statement that an abstract will be presented at ASCO's meeting is a representation that the abstract contains new, previously undisclosed data.

On May 2, 4, 5, and 19, 2016, defendants touted that they would present at the June 2016 ASCO conferences.  (*See* SAC ¶¶ 4, 74, 78, 80, 84.)  Given the context alleged above, this meant defendants would present new data at those meetings. In two of the challenged statements, defendants even expressly represented that updates would be provided.  (*Id.* ¶¶ 78, 84.)  But on April 29, 2016, defendants presented TNBC IMMU-132 information at the 12th Annual Protein and Engineering Summit (PEGS) in Boston and published a related press release. (*Id.* ¶ 72.)  Tsai alleges that the information presented and released was the same defendants intended to present at the ASCO conferences in June 2016, which they failed to disclose.  (*See, e.g.*, *id.* ¶¶ 4, 7, 9, 72-73, 88.)  Therefore, reasonable investors would continue to expect presentations in June 2016 that revealed new information, beyond the contents of the Boston presentation. Under the circumstances, and at this pleadings stage of the litigation, an inference may be drawn that defendants' May 2016 statements were false or misleading.

Defendants continue to argue that this claim element is not met because their statements were true when made.  Indeed, as the Court recognized in its prior opinion, whether a statement is misleading is measured at the time it was made, and liability cannot be imposed based on subsequent events. *See In re NAHC, Inc. Sec. Litig.*, 306 F.3d 1314, 1330 (3d Cir. 2002). However, the second amended complaint challenges defendants' statements insofar as they signaled to the market after the Boston presentation that new data would be forthcoming at the

8

ASCO conference. If, as the second amended complaint alleges and as the Court must take as true at this stage of the litigation, defendants had no results to present at the ASCO conferences that they had not already disclosed, the challenged statements were untrue when made and did not become untrue only when ASCO cancelled defendants' TNBC presentation. As ASCO's cancellation of the company's June 3 presentation is no longer alleged to be the event that rendered defendants' statements false and misleading, defendants' argument misses the mark.

Relying primarily on the Court's opinion dismissing the earlier version of the complaint, defendants also contend that their May 2016 statements were not false or misleading because defendants also revealed the Boston presentation; essentially, they argue that the information was already out there for investors to digest. It is true that other disclosures a company makes can render challenged statements immaterial, and can warrant the pleadings-stage dismissal of securities fraud claims. *See Fan v. StoneMor Partners* LP, 927 F.3d 710, 716-17 (3d Cir. 2019). But alongside the disclosures defendants cite were the nearly contemporaneous statements that defendants expected to present at the ASCO conferences, which, in the context now more clearly supplied in the operative complaint, would signal to a reasonable investor that something more was coming and that the data from the Boston presentation was different. Given the fact-intensive nature of the issue here, the Court declines to dismiss the second amended complaint on this basis. *See T. Rowe Price Growth Stock Fund, Inc. v. Valeant Pharms. Int'l, Inc.*, 2018 U.S. Dist. LEXIS 6134, at *18 (D.N.J. Jan. 12, 2018) (Shipp, J.); *In re Enzymotec Secs. Litig.*, 2015 U.S. Dist. LEXIS 167403, at *51-52 (D.N.J. Dec. 14, 2015) (Linares, J.).

While a close issue, the Court also declines to dismiss the claim insofar as it relies on the June 3 press release, which quoted Sullivan as stating that she and Dr. Bardia were attempting to reverse ASCO's decision because "we believe the patient population and results reported in

9

April were different from those" in the abstract submitted to ASCO. (SAC ¶ 90.)  Although qualified by the "belief" language, the statement implies that Sullivan and Dr. Bardia had looked into the issue and had a factual basis for an argument that the data were different.  The complaint alleges that Dr. Bardia had done no such thing and had no such belief and facts supporting the proposition that the data presented in Boston mirrored what defendants intended to present at the ASCO conferences.  *See City of Edinburgh Council v. Pfizer, Inc.*, 754 F.3d 159, 170 (3d Cir. 2014).  Whether this press release ultimately supports a finding of liability will await development of an appropriate factual record.

Defendants correctly observe that in ruling on their motion to dismiss the prior version of the complaint, the Court concluded that the June 3 statement was inactionable opinion.  But in so ruling, the Court observed that Tsai had made no argument specific to this statement and that the complaint relied simply on the fact of the cancellation to assert that the Boston presentation was identical to the proposed ASCO presentation.  With the benefit of the revisions to the complaint, which, among other things, include greater attention to context and more focused allegations, the Court decides the issue differently.[4]

### 2. Scienter

Defendants also argue that the scienter element is insufficiently pleaded.  Scienter is "a mental state embracing intent to deceive, manipulate, or defraud." *City of Cambridge Ret. Sys.*, 908 F.3d at 879; *Martin*, 757 F. App'x at 153.  To properly allege this element, a plaintiff "must assert facts giving rise to a strong inference of reckless or conscious behavior."  *Martin*, 757 F.

---

[4] Defendants also argue, again essentially in passing, that PSLRA safe harbor applies because the challenged statements were forward-looking, and forward-looking statements are not actionable under certain circumstances.  But defendants simply recite those circumstances without attempting to show if or how they apply here.

10

App'x at 153. A statement is "reckless" when it involves "not merely simple, or even inexcusable negligence, but an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it." *Id.* at 153-54 (citations and internal quotation marks omitted). An inference of scienter is "strong" when it is "more than merely plausible or reasonable," and is "cogent and at least as compelling as any opposing inference of nonfraudulent intent." *Tellabs*, 551 U.S. at 314. The inquiry is whether "*all* of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation, scrutinized in isolation, meets that standard." *Id.* at 322-23.

The second amended complaint sufficiently alleges that defendants acted at least recklessly in making the challenged statements. It alleges facts plausibly indicating defendants' knowledge of and experience with the ASCO effect,[5] their awareness of and agreement to abide by ASCO's confidentiality requirements, and their knowledge that they had already presented the data in Boston. (SAC ¶¶ 5-6, 8-9, 53-54, 65, 68, 77, 79, 83, 86, 88, 116.) Assuming the truth of those allegations, it can be permissibly inferred that the risk that an investor would be lulled into expecting new results at the ACSO conferences would have been known or obvious to defendants. The complaint also alleges defendants' awareness of ASCO's confidentiality requirements (*id.* ¶¶ 65, 68), their knowledge that no new data would be forthcoming (*id.* ¶¶ 9, 77, 79, 83, 86, 88, 116), and their awareness that if ASCO discovered a breach of the confidentiality requirements, it could eliminate an accepted abstract from the conference (*id.* ¶ 67). Finally, the complaint points to the post-June 3 stock sales by Goldenberg and Sullivan,

---

[5] This is explained as the phenomenon of biotechnology and pharmaceutical companies' share prices routinely jumping based on announcements that new, undisclosed results will be presented at the ASCO annual meeting.

11

and, with the benefit of the re-framed allegations, now more clearly asserts that those sales were timed to take advantage of the information imbalance while not obviously violating the ASCO confidentiality policy insofar as it prohibited using the contents of the company's abstract to trade in its securities, *i.e.*, after the expected June 3 presentation was cancelled but before the full disclosure of the truth to the market – which occurred when the Best of ASCO program closed on June 25 without defendants having participated. (*See id.* ¶¶ 45-46, 66, 94.) The inference of scienter, in view of the complaint's re-framed allegations, is at least as compelling as an inference that defendants acted innocently but negligently, and the claim under Section 10(b) and Rule 10b-5 will be permitted to proceed.

### B. Section 20(a) Claim

To adequately plead liability under Section 20(a), a plaintiff must allege an underlying violation of the Exchange Act by the controlled person or entity, control by the putative Section 20(a) defendant, and that that defendant was a "culpable participant" in the acts constituting the violation. *Belmont v. MB Inv. Partners, Inc.*, 708 F.3d 470, 484 (3d Cir. 2013). The second amended complaint alleges each of these elements, including, as discussed herein, a plausible Section 10(b) violation, control by the individual defendants, in view of their roles in the company and in the specific presentations in issue, and their roles in making the challenged statements. Again, the question of ultimate liability is for another day; the claim may proceed past the pleadings stage.

### V. Conclusion

For the reasons set forth above, defendants' motion to dismiss the second amended complaint will be denied. An appropriate order will issue.

Date: June 1, 2020

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.