**NOT FOR PUBLICATION**

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| JESSICA FERGUS, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>IMMUNOMEDICS, INC., CYNTHIA L. SULLIVAN, PETER P. PFREUNDSCHUH AND DAVID GOLDBERG,<br><br>*Defendants*. | Civil No.: 16-cv-3335 (KSH) (CLW)<br><br><br><br>**OPINION** |

**Katharine S. Hayden, U.S.D.J.**

**I.   Introduction**

Defendants Immunomedics, Inc. and Peter P. Pfreundschuh (the "Moving Defendants") have moved for reconsideration of the Court's June 1, 2020 decision declining to dismiss the second amended complaint in this securities action.  Moving Defendants argue that scienter was not adequately pleaded against them.  The motion will be denied.

**II.   Background**

As recounted in the Court's prior opinions in this case, plaintiff Sensung Tsai alleges that Immunomedics and the three individual defendants, who were executives at Immunomedics at the time of the events challenged in this lawsuit, made false and misleading statements about the company's anticipated participation in a 2016 industry conference.  According to plaintiff, these statements aimed to increase the company's stock price, help it secure a licensing partner, and result in profits for the defendants.  The factual allegations are addressed in greater depth in the Court's earlier rulings and will not be set forth in detail again now. For present purposes, it suffices to reiterate that plaintiff contends that at an April 2016 presentation in Boston (the

"PEGS Boston presentation"), Immunomedics disclosed data that defendants repeatedly represented would be the subject of upcoming June 2016 presentations at the ASCO annual meeting and "Best of ASCO" program. Because this early disclosure violated ASCO's data embargo, Immunomedics was partially excluded from participating in the June 2016 conferences. Plaintiff alleges that this conduct resulted in his purchase of company stock at artificially inflated prices, and violated Sections 10(b) and 20(a) of the Securities Exchange Act of 1934, as well as SEC Rule 10b-5.

In March 2019, the Court dismissed the consolidated complaint without prejudice because it failed to adequately plead material misrepresentations or omissions or scienter. (D.E. 29 (the "2019 Opinion"), D.E. 30.) The operative second amended complaint was filed on May 30, 2019 (D.E. 33), and a "corrected" version was filed on June 3, 2019 (D.E. 34, SAC). Defendants moved to dismiss it, arguing that the amendments failed to correct the deficiencies identified in Court's earlier opinion. The Court denied that motion on June 1, 2020. (D.E. 51 (the "2020 Opinion"), D.E. 52.) Moving Defendants now seek reconsideration, contending that the SAC failed to adequately plead scienter with respect to them. (D.E. 56.) Plaintiff opposes, characterizing the motion for reconsideration as a mere disagreement with the Court's earlier conclusions. (D.E. 59.)

**III.   Standard of Review**

Motions for reconsideration are governed by L. Civ. R. 7.1(i), which allows an aggrieved party to seek reconsideration where the party believes the Court has overlooked information or controlling law. The movant must demonstrate "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the

motion . . . ; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." *Max's Seafood Cafe by Lou-Ann, Inc. v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999).

Reconsideration is considered an "'extraordinary remedy'" to be granted "'sparingly.'" *Fannie Mae v. Dubois*, 2019 WL 6522822, at *2 (D.N.J. Dec. 4, 2019) (Vazquez, J.) (quoting *NL Indus., Inc. v. Commercial Union Ins. Co.*, 935 F. Supp. 513, 516 (D.N.J. 1996)). It is not warranted simply because a party disagrees with a decision or wants to reargue the original motion. *Id.* A motion for reconsideration is likewise "not an opportunity to raise matters that could have been raised before the original decision was reached." *Id.* To warrant reconsideration, the movant must "present 'something new or something overlooked by the court in rendering the earlier decision.'" *Summerfield v. Equifax Info. Servs. LLC*, 264 F.R.D. 133, 145 (D.N.J. 2010) (Rodriguez, J.) (quoting *Khair v. Campbell Soup Co.*, 893 F. Supp. 316, 337 (D.N.J. 1995)). "Overlooked" refers "only to facts and legal arguments that might reasonably have resulted in a different conclusion had they been considered." *Id.*

**IV.    Discussion**

In the motion for reconsideration, Moving Defendants contend that the Court incorrectly concluded that the scienter element of the claims against them was adequately pleaded. They point to no change in the law nor any new evidence; instead, they appear to be taking the position that the Court erred in applying established law on pleading requirements for scienter to the facts alleged in the second amended complaint.

As the Court has previously acknowledged, to adequately plead scienter, a complaint must state with particularity facts giving rise to a "strong inference" that the defendant had the requisite state of mind, *i.e.*, an intent to deceive, manipulate, or defraud. *City of Cambridge Ret. Sys. v. Altisource Asset Mgmt. Corp.*, 908 F.3d 872, 879 (3d Cir. 2018); *Martin v. GNC*

3

*Holdings, Inc.*, 757 F. App'x 151, 153 (3d Cir. 2018).  This state of mind encompasses either conscious or reckless behavior.  *Martin*, 757 F. App'x at 153 (citing *Institutional Inv. Grp. v. Avaya, Inc.*, 564 F.3d 242, 252 (3d Cir. 2009)).  A statement is made "recklessly" when it is not merely negligent but an "'an extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'"  *Id.* at 153-54 (quoting *Avaya*, 564 F.3d at 267 n.42).

To be sufficiently "strong," the inference that a party acted with the requisite state of mind must be "more than merely plausible or reasonable--it must be cogent and at least as compelling as any opposing inference of nonfraudulent intent."  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007).  The Court must consider not only inferences favoring the plaintiff, but also "'plausible, non-culpable explanations for the defendant's conduct,'" and must consider all of the facts collectively, rather than individual allegations in isolation.  *Martin*, 757 F. App'x at 154 (quoting *Tellabs*, 551 U.S. at 324).

The motion for reconsideration takes issue with how the Court applied these standards in the June 2020 Opinion.  First, Immunomedics argues that the Court "overlooked" that the fact of the PEGS Boston presentation and subsequent disclosure of it are "inconsistent" with an inference of scienter.  Relying on the 2019 Opinion, which addressed an earlier version of plaintiff's complaint, Immunomedics contends that the second amended complaint fails to explain why defendants would have made the PEGS Boston presentation or disclosed it thereafter if they wanted to take advantage of the ASCO effect.  In other words, they continue to argue that it would not make sense for defendants to have participated in or disclosed their participation in the Boston event if they knew it may disqualify them from the ASCO event.  But

4

this reasoning (and Immunomedics' continued reliance on language in the 2019 Opinion) ignores the impact of the revised allegations in plaintiff's second amended complaint. The prior version of the complaint focused on whether the challenged statements improperly omitted the risk that the company would be disqualified from ASCO based on the PEGS Boston presentation.  When the allegations were so framed, *disclosure* of the PEGS Boston presentation would indeed suggest that defendants had no intent to deceive -- because they disclosed what plaintiff was then alleging they failed to disclose.  But as the Court recognized, plaintiff's claims have been revised:

> The second amended complaint makes a subtle, but consequential, modification to the framing of the claims: it alleges that the challenged statements were allegedly false and misleading not necessarily because they represented that defendants would be making presentations at ASCO without disclosing that those presentations were at risk of cancellation, but because they signaled that the company had new, updated TNBC data to present – a precondition to presenting at ASCO – when it didn't. . . . In other words, it was not the risk of exclusion from ASCO that Tsai believes defendants had an obligation to disclose and that caused the company's share price to be artificially inflated during the class period; it was that no new data would be presented at those conferences.

(2020 Opinion at 6-7.)  Participating in PEGS Boston and disclosing that fact are not inconsistent with an intent to deceive investors into believing that new data would be forthcoming so that defendants could benefit from the so-called ASCO effect; at minimum, the second amended complaint alleges at least a reckless state of mind in view of, *inter alia*, defendants' prior experience with ASCO and the ASCO effect, their agreement to abide by ASCO's confidentiality requirements, and their knowledge of the PEGS Boston presentation and contents. (*See id.* at 11-12.)  Immunomedics seeks to chip away at the strength of an inference of scienter by suggesting that if the goal were really to present at the ASCO conference and reap the benefits, Immunomedics would not have presented in Boston. This misses the point.  The question is whether what plaintiffs have alleged to have actually happened permits a strong

inference—one at least as compelling as the opposite inference—that Immunomedics had the requisite state of mind.  In concluding that plaintiff's allegations, as amended, permitted such an inference, the Court was not required to demand an "irrefutable," "smoking-gun" inference, or even that the inference of scienter be "the most plausible of competing inferences."  *Tellabs*, 551 U.S. at 324.[1]  Immunomedics disagrees with the Court's conclusion, but that is not a sufficient basis for reconsideration. *Leja v. Schmidt Mfg.*, 2008 WL 1995140, at *3 (D.N.J. May 6, 2008) (Debevoise, J.) ("A motion for reconsideration may not be used to 'ask the Court to rethink what it had already thought through—rightly or wrongly.'" (quoting *Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co. of Maryland*, 744 F. Supp. 1311, 1314 (D.N.J. 1990))).

      As to Pfreundschuh, it bears repeating that a motion for reconsideration is "not an opportunity to raise matters that could have been raised before the original decision was reached." *Fannie Mae*, 2019 WL 6522822, at *2.  For the first time, defendants have now offered an argument specific to the allegations against Pfreundschuh; they did not do so in seeking dismissal of the consolidated complaint, and in seeking dismissal of the second amended complaint, they argued merely that "[a]s to Mr. Pfreundschuh, the SAC does not even purport to allege any such motive."  (D.E. 41, at 23).  This line, paraphrased from the 2019 Opinion, was accompanied by no further analysis or argument.  Substantively, Pfreundschuh's argument also does not warrant reconsideration. While motive can indeed be a "relevant consideration" in the scienter analysis, it is not required in order for scienter to be adequately pleaded. *Tellabs*, 551 U.S. at 325. Nor does the second amended complaint rely on impermissible group pleading.  *Cf.*

---

[1] As plaintiff's opposition brief suggests, "[a]n equally plausible, if not more plausible inference, is that Defendants believed no one would catch on to their attempts to present already-presented data as new."  (D.E. 59, Opp. Br. 5.)

Moving Br. 6 (citing *Winer Family Trust v. Queen*, 503 F.3d 319, 337 (3d Cir. 2007)).[2]  Plaintiff has alleged Pfreundschuh's involvement in making at least one of the challenged statements and his knowledge of, or reckless disregard for, information that made that statement allegedly false. Plaintiff is also alleged to have been CFO from 2013 through June 21, 2016, during the alleged "test runs" of the ASCO effect in years prior to 2016.[3]  The "extraordinary" relief of reconsideration on either the Section 10(b)/Rule 10b-5 claim or the Section 20(a) claim (the latter of which the motion does not directly address) is not warranted.

**V.       Conclusion**

The motion for reconsideration is denied. An appropriate order will issue.


Date: March 29, 2021

/s/ Katharine S. Hayden
Katharine S. Hayden, U.S.D.J.

---

[2] The group pleading doctrine was a presumption that statements in "group-published documents" such as press releases and annual reports were attributable to directors and officers with day-to-day control of operations.  *Id.* at 335-37.

[3] To the extent plaintiff contends that Pfreundschuh's resignation in mid-June 2016 supports an inference of scienter (Opp. Br. 8), the Court disagrees. "For a resignation to add to an inference of scienter, a pleading must set forth allegations suggesting a compelling inference that the resignation was the result of something other than 'the reasonable assumption that the resignation occurred as a result of' the release of bad news. . . . In other words, for corporate departures to strengthen an inference of scienter, there must be particularized allegations connecting the departures to the alleged fraud."  *In re Hertz Global Holdings, Inc.*, 905 F.3d 106, 118 (3d Cir. 2018) (internal citation omitted).  The second amended complaint does not so allege; indeed, it alleges that Pfreundschuh served as a consultant for the company for three months after his resignation.  (SAC ¶ 26.)