# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

|  |  |  |
|---|---|---|
| JESSICA FERGUS, Individually and On Behalf of All Others Similarly Situated, | : :  : | Civil Action No.: 2:16-cv-03335(KSH)(CLW) |
|  | : | |
| *Plaintiff,* | : | |
|  | : | |
| v. | : | |
|  | : | |
| IMMUNOMEDICS, INC., CYNTHIA L. SULLIVAN, PETER P. PFREUNDSCHUH and DAVID GOLDENBERG, | : : : | |
|  | : | |
| *Defendants.* | : | |

---

## MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR ENTRY OF ORDER PRELIMINARILY APPROVING SETTLEMENT AND ESTABLISHING NOTICE PROCEDURES

---

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ  07102
Telephone: (973) 623-3000
Facsimile: (973) 623-0858
bgreenberg@litedepalma.com

*Liaison Counsel for the Class*

**HAGENS BERMAN SOBOL SHAPIRO LLP**

Reed R. Kathrein (admitted *Pro Hac Vice*)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
Facsimile:  (510) 725-3001
reed@hbsslaw.com

*Lead Counsel for the Class*

*[Additional Counsel Appear on Signature Page]*

910557.2

# TABLE OF CONTENTS

**Page**

I.      INTRODUCTION .......................................................................................................1

II.     BACKGROUND .........................................................................................................2

III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS
        APPROPRIATE...........................................................................................................4

        A.      Standards for Preliminary Approval ...................................................................4

        B.      Preliminary Approval is Supported Because This Settlement Was
                Negotiated at Arm's Length Between Experienced Counsel .............................6

        C.      The *Girsh* Factors Support Preliminary Approval................................................6

        D.      The Attorneys' Fees Award and Lead Plaintiff's Award Are
                Reasonable ........................................................................................................8

IV.     THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION
        ON CLASS CERTIFICATION TO PROVIDE NOTICE TO THE
        PUTATIVE CLASS....................................................................................................9

        A.      The Proposed Class Satisfies Rule 23(a) .........................................................11

                1.      The Class is Sufficiently Numerous That Joinder is
                        Impracticable........................................................................................11

                2.      There Are Common Questions of Law or Fact to the Class .................12

                3.      The Proposed Class Representative's Claims Are Typical
                        of the Class's Claims .............................................................................13

                4.      The Proposed Class Representative Will Fairly and
                        Adequately Protect the Interests of the Class .........................................14

        B.      The Proposed Class is Ascertainable ................................................................16

        C.      The Proposed Class Satisfies Rule 23(b)(3) .....................................................18

                1.      Common Questions of Law and Fact Predominate Over
                        Individual Questions ...............................................................................18

                        a.      Common Questions of Law and Fact Predominate
                                Because Lead Plaintiff's Claims Are Based on the
                                Same Common Course of Conduct............................................20

i

b.      All Class Members Are Entitled To a Presumption of Reliance ...................................................................20

c.      Immunomedics's Listing on the NASDAQ Is, By Itself, Evidence of Market Efficiency ...........................................22

(1)      Each of the *Cammer* Factors Support Class Certification .................................................................22

(2)      The *Krogman/Unger* Factors Likewise Support Class Certification ...........................................25

2.      A Class Action Is Superior to Piecemeal Litigation ..............................26

D.      Hagens Berman Should Be Appointed as Class Counsel Under Rule 23(g) .............................................................................28

V.      THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B) .................................................................................29

VI.      PROPOSED SCHEDULE OF EVENTS ................................................31

VII.      CONCLUSION ......................................................................................32

# TABLE OF AUTHORITIES

<div align="right">

**Page(s)**

</div>

## CASES

*Alfaro v. First Advantage LNS Screening Sol. Inc.*,
2017 WL 3567974 (D.N.J. Aug. 16, 2017) ....................................................13, 14

*Alves v. Main*,
2012 WL 6043272 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) ......................................................................................................................6

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591 (1997).................................................................................9, 18

*Amgen Inc. v. Conn. Ret. Plans & Trust Funds*,
568 U.S. 455 (2013)................................................................................. *passim*

*Basic Inc. v. Levinson*,
485 U.S. 224 (1988).................................................................................20, 21

*Bing Li v. Aeterna Zentaris, Inc.*,
324 F.R.D. 331 (D.N.J. 2018)................................................................... *passim*

*Byrd v. Aaron's Inc.*,
784 F. 3d 154 (3d Cir. 2015)......................................................................16, 17

*Cammer v. Bloom*,
711 F. Supp. 1264 (D.N.J. 1989) .............................................................. *passim*

*Chan v. New Oriental Ed. & Tech. Group Inc.*,
Case No. 2:16-cv-09279-KSH-CLW, Dkt. No. 94 .................................................9

*In re Charter Commc'ns, Inc. Sec. Litig.*,
2005 WL 4045741 (E.D. Mo. June 30, 2005) ......................................................8

*Cheney v. Cyberguard Corp.*,
213 F.R.D. 484.................................................................................................26

*In re CIGNA Corp.*,
2007 WL 2071898 (E.D. Pa. July 13, 2007)..........................................................6

*City of Sterling Heights Gen. Employees' Ret. Sys. v. Prudential Fin., Inc.*,
2015 WL 5097883 (D.N.J. Aug. 31, 2015) ................................................. *11-12*

*In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*,
795 F. 3d 380 (3d Cir. 2015)...........................................................................17

*In re Corel Corp. Secs. Litig.*,
   206 F.R.D. 533 (E.D. Pa. 2002)....................................................................13

*Davis v. Katanga Mining Ltd.*,
   Case No. 2:17-cv-12188, Dkt. No. 107 .........................................................9

*In re DVI Inc. Sec. Litig.*,
   249 F.R.D. 196 (E.D. Pa. 2008).........................................................23, 25, 26

*In re DVI, Inc. Sec. Litig.*,
   639 F.3d 623 (3d Cir. 2011)...........................................................................22

*Ehrheart v. Verizon Wireless*,
   609 F.3d 590 (3d Cir. 2010)..............................................................................4

*Eisen v. Carlisle & Jacquelin*,
   417 U.S. 156 (1974).......................................................................................31

*Erica P. John Fund, Inc. v. Halliburton Co.*,
   563 U.S. 804 (2011).......................................................................................10

*In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*,
   55 F.3d 768 (3d Cir. 1995)................................................................................4

*Girsh v. Jepson*,
   521 F.2d 153 (3d Cir. 1975)...............................................................5, 6, 7, 8

*Halliburton Co. v. Erica P. John Fund, Inc.*,
   573 U.S. 258 (2014).........................................................................10, 20, 21

*Hargrove v. Sleepy's LLC*,
   974 F. 3d 467 (3d Cir. 2020)..........................................................................17

*Hull v. Glob. Dig. Sols., Inc.*,
   2018 WL 4380999 (D.N.J. Sept. 14, 2018) ...........................................24, 26

*Johnson v. Comodo Grp., Inc.*,
   2020 WL 525898 (D.N.J. Jan. 31, 2020) ..................................................27-28

*Jones v. Commerce Bancorp, Inc.*,
   2007 WL 2085357 (D.N.J. Jul. 16, 2007)...................................................5, 31

*Li v. Aeterna Zentaris, Inc., et al.*,
   Case No. 3:14-cv-07081, Dkt. No. 193 ...........................................................9

910557.2

*In re Merck & Co., Inc. Sec., Derivative & ERISA Litig.*,
    2013 WL 396117 (D.N.J. Jan. 30, 2013) ...................................................14, 19, 22

*In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*,
    2012 WL 4482041 (D.N.J. Sept. 25, 2012) ..............................................12, 23, 24

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
    339 U.S. 306 (1950).............................................................................................30

*In re Nat. Football League Players Concussion Injury Litig.*,
    775 F.3d 570 (3d Cir. 2014)..............................................................................4, 9

*In re Nat'l Football League Players' Concussion Injury Litig.*,
    301 F.R.D. 191 (E.D. Pa. 2014)..........................................................................5, 6

*Neale v. Volvo Cars of N. Am., LLC*,
    794 F. 3d 353 (3d Cir. 2015)................................................................................19

*Nepomuceno v. Midland Credit Mgmt.*,
    2016 WL 3392299 (D.N.J. Jun. 13, 2016) .....................................................10, 14

*Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*,
    259 F. 3d 154 (3d Cir. 2001)................................................................................13

*In re NFL Players Concussion Injury Litig.*,
    821 F.3d 410 (3d Cir. 2016)................................................................................13

*In re Novo Nordisk Secs. Litig.*,
    2020 WL 502176 (D.N.J. Jan. 31, 2020) ...................................................... *passim*

*Pepe v. Cocrystal Pharma, Inc. et al.*,
    Case No. 2:18-cv-14091, Dkt. No. 86 ...................................................................9

*In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*,
    148 F. 3d 283 (3d Cir. 1998)................................................................................30

*Reyes v. Netdeposit, LLC*,
    802 F. 3d 469 (3d Cir. 2015)................................................................................18

*Rodriguez v. Nat'l City Bank*,
    726 F. 3d 372 (3d Cir. 2013)................................................................................12

*Roofer's Pension Fund v. Papa*,
    333 F.R.D. 66 (D.N.J. 2019)................................................................... *passim*

*In re Schering-Plough Corp./ENHANCE Secs. Litig.*,
    2012 WL 4482032 (D.N.J. Sept. 25, 2012) .........................................................16

*Schuler v. Meds. Co.*,
    2016 WL 3457218 (D.N.J. Jun. 24, 2016) ........................................................................20

*Singleton v. First Student Mgmt. LLC*,
    2014 WL 3865853 (D.N.J. Aug. 6, 2014) ...............................................................5, 23, 26

*Smith v. Suprema Specialties, Inc.*,
    2007 WL 1217980 (D.N.J. Apr. 23, 2007) ....................................................................18

*Stewart v. Abraham*,
    275 F. 3d 220 (3d Cir. 2001) ......................................................................................11

*Sullivan v. DB Invs., Inc.*,
    667 F.3d 273 (3d Cir. 2011) ......................................................................................18

*Trief v. Dun & Bradstreet Corp.*,
    840 F. Supp. 277 (S.D.N.Y. 1993) ..............................................................................4

*Utesch v. Lannett Co., Inc.*,
    2021 WL 3560949 (E.D. Pa. Aug. 12, 2021) .............................................................18

*In re Valeant Pharms. Int'l, Inc. Secs. Litig.*,
    2020 WL 3166456 (D.N.J. Jun. 15, 2020) ............................................................19, 20

*Van Dorp v. Indivior PLC, et al.*,
    Case No. 2:19-cv-10792, Dkt. No. 57 ...........................................................................9

*Vista Healthplan, Inc. v. Cephalon, Inc.*,
    2015 WL 3626005 (E.D. Pa. June 10, 2015) ..............................................................19

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004) ........................................................................................4

*Williams v. Jani-King of Philadelphia Inc.*,
    837 F. 3d 314 (3d Cir. 2016) ..............................................................................11, 18

*In re Winstar Commc'ns Secs. Litig.*,
    290 F.R.D. 437 (S.D.N.Y. 2013) ...............................................................................17

## STATUTES

15 U.S.C. § 78u-4(a)(7) ...........................................................................................30

PSLRA ...............................................................................................17, 28, 30

Securities Exchange Act of 1934 Section 10(b) ......................................................... *passim*

## OTHER AUTHORITIES

7 Conte & Newberg, *Newberg on Class Actions* §22.91 (4th ed. 2002) ........................................4

Federal Rule 9(b) ...........................................................................................................28

Federal Rules of Civil Procedure Rule 23(e).................................................................1, 4

Rule 10b-5....................................................................................................................8, 21

Rule 23 ..................................................................................................................... *passim*

Rule 23(a).................................................................................................................10, 11

Rule 23(a)(1) ..................................................................................................................11

Rule 23(a)(2) ..................................................................................................................12

Rule 23(a)(3) ..................................................................................................................13

Rule 23(a)(4) ..................................................................................................................14

Rule 23(b)(1) ...................................................................................................................9

Rule 23(b)(3) ........................................................................................................ *passim*

Rule 23(e)(2)(C)(iii) .........................................................................................................8

Rule 23(g) ......................................................................................................................28

Rule 23(g)(1)(A) ............................................................................................................28

Rule 23(g)(2)..................................................................................................................28

Rules 23(a) and 23(b)(3).................................................................................................11

910557.2

Pursuant to Rule 23(e) of the Federal Rules of Civil Procedure, Lead Plaintiff Sensung Tsai ("Lead Plaintiff") respectfully submits this memorandum in support of Lead Plaintiff's Unopposed Motion for Preliminary Approval of the Class Action Settlement and Establishing Notice Procedures.[1] Lead Plaintiff also requests that the Court schedule a final approval hearing (the "Settlement Hearing"), where it will rule on the request for final approval of the proposed Settlement, the Plan of Allocation of Settlement proceeds, the request for attorneys' fees and reimbursement of expenses request, and the award to Lead Plaintiff.

## I.    INTRODUCTION

Lead Plaintiff and Defendants Immunomedics, Inc. ("Immunomedics" or the "Company"), Cynthia Sullivan, Peter Pfreundschuh, and David Goldenberg (collectively, "Defendants") have agreed to settle this case for $4 million (the "Settlement").[2] The Court need not, at this time, determine whether to finally approve the Settlement. Rather, by this motion, Lead Plaintiff asks the Court to take the first step in the approval process by entering an order: (i) granting preliminary approval of the proposed Settlement; (ii) certifying, for settlement purposes only, the proposed Settlement Class; (iii) approving the Settling Parties' proposed form and method of giving notice to the proposed Settlement Class; and (iv) setting a date for a Settlement Hearing and deadlines for mailing and publication of the Notice, the filing of Settlement Class Member objections, the filing of Settlement Class Member opt-out notices, the filing of Lead Plaintiff's Motion for Final Approval of the Settlement, and the filing of Lead Plaintiff's Counsel's application for attorneys' fees, expenses, and award to Lead Plaintiff.

---

[1] Unless otherwise defined herein, all capitalized terms shall have the meanings provided in the Stipulation and Agreement of Settlement dated April 13, 2022 (the "Settlement Stipulation"), which is being filed concurrently herewith as Ex. A to Reed R. Kathrein Decl. ("Kathrein Decl.").

[2] Because the Settlement Class has not been notified of the Settlement, the Court does not have the benefit of their reaction. It will at final approval.

The Settlement is a model of how responsible, experienced attorneys can use the securities laws to compensate aggrieved investors for their losses while limiting the drain on judicial resources. Counsel on both sides recognized that for a variety of reasons, this case was suitable for early resolution. They examined and discussed the case's strengths and weaknesses. They negotiated in good faith and at arm's length during mediation and reached the Settlement.

As a result, the Court will not need to decide any motions for summary judgment, class certification, and/or discovery motions; and the Settling Parties will be spared the costs of litigating this case because of depositions, class certification, summary judgment, and trial.[3] Yet the Settlement will permit Settlement Class Members to recover compensable losses (before fees and costs).

The Court should also enter ancillary relief necessary for preliminary approval. The Court should preliminarily certify a Settlement Class, because all the requirements are met, and Defendants do not oppose class certification for settlement purposes. The Court should approve the plan to provide notice to the Class and the specific documents which will do so, because they meet all applicable requirements. Lastly, the Court should set a date for the fairness hearing where, armed with class members' reactions to the settlement, it will determine whether to finally approve the Settlement, attorneys' fees and expense reimbursements, and an award to Lead Plaintiff.

## II.      BACKGROUND

This case (the "Action") was filed on June 9, 2016. Dkt. No. 1. Sensung Tsai timely moved for appointment, and was appointed, as Lead Plaintiff. Dkt. No. 14. The Court also appointed Mr.

---

[3] At the time the Settling Parties reached settlement, they were preparing for Defendants' depositions and class certification, all of which would have been costly and resource intensive.

Tsai's chosen counsel, Hagens Berman Sobol Shapiro LLP as Lead Counsel and Lite DePalma Greenberg & Afanador, LLC as Liaison Counsel. *Id.*

Then, on October 4, 2017, Lead Plaintiff timely filed a Consolidated Complaint (Dkt. No. 15) (the "Amended Complaint"). Defendants filed a motion to dismiss the Amended Complaint and, on March 31, 2019, the Court granted Defendants' motion and dismissed the Amended Complaint without prejudice. Dkt. No. 29.

On May 30, 2019, Lead Plaintiff timely filed the operative Second Amended Consolidated Complaint ("Second Amended Complaint" or "SAC") in this Action. *See* Dkt. Nos. 33-35 (Second Amended Complaint and subsequent filings on June 3 and 6, 2019 correcting the Second Amended Complaint). Defendants filed a motion to dismiss the Second Amended Complaint and the Court denied Defendants' motion on June 1, 2020. Dkt No. 51.[4] Defendants Cynthia Sullivan and David Goldenberg filed their Answer to the Second Amended Complaint on June 29, 2020. Dkt. No. 58.

On May 4 and 5, 2021, the Settling Parties attended a mediation with retired Judge Alfred Lechner but were unsuccessful in resolving this Action. On May 17, 2021, Defendants Immunomedics and Peter Pfreundschuh filed their Answer to the Second Amended Complaint. Dkt. No. 81.

The Court entered a Supplemental Pretrial Scheduling Order on November 30, 2021 (Dkt. No. 104), which controls the current deadlines in this Action. Pursuant to the Supplemental Pretrial Scheduling Order, Lead Plaintiff served Defendants with, but did not file, his Motion for Class Certification, Appointment of Class Representative, and Appointment of Class Counsel on

---

[4] On March 29, 2021, the Court also denied Defendants Immunomedics and Peter Pfreundschuh's motion for reconsideration of the Court's decision declining to dismiss the Second Amended Complaint. Dkt. No. 76.

910557.2

November 24, 2021. Thereafter, Defendants did not serve an Opposition and Lead Plaintiff did not serve a Reply because the Settling Parties were exploring settlement.

The Settling Parties and Lead Plaintiff attended a full-day mediation with Jed Melnick of JAMS on January 12, 2022, and were successful at reaching settlement. As a result, The Settling Parties requested that all case deadlines and proceedings be stayed, and the Court approved the request on January 25, 2022. Dkt. No. 106.

## III.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

### A.    Standards for Preliminary Approval

This circuit has a "strong judicial policy in favor of class action settlement." *Ehrheart  v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010); *see also In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004). "Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts." *Ehrheart*, 609 F.3d at 594. This is particularly true for class actions  involving complex litigation and securities matters. 7 Conte & Newberg, *Newberg on Class Actions* §22.91 at 386-387 (4th ed. 2002) ("Securities suits readily lend  themselves to compromise, because of the notable unpredictability of result and the potential for litigation spanning up to a decade or more" (citations  omitted)); *Trief v. Dun & Bradstreet Corp.*, 840 F. Supp. 277, 281 (S.D.N.Y. 1993) ("Securities class  action litigation is 'notably difficult and notoriously uncertain'") (citations omitted)); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768,  784 (3d Cir. 1995) ("The law favors settlement, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation.").

Because this is a class action, the Settlement must be approved by the Court. Fed. R. Civ. P. 23(e). Courts usually conduct a preliminary assessment of the settlement before directing notice, a practice recently endorsed by the Third Circuit. *In re Nat. Football League Players Concussion Injury Litig.*, 775 F.3d 570 (3d Cir. 2014) ("*National Football II*") (citing Manual for Complex Litigation § 21.632 (4th ed. 2004)); *see also* 4 H. Newberg & A. Conte, *Newberg on Class Action* (4th ed. 2002), at ¶ 11.25, p. 38. "Preliminary approval is not binding, and it is granted unless a proposed settlement is obviously deficient." *Jones v. Commerce Bancorp, Inc.*, 2007 WL 2085357, at *2 (D.N.J. Jul. 16, 2007); *accord Singleton v. First Student Mgmt. LLC*, 2014 WL 3865853, at *5 (D.N.J. Aug. 6, 2014). Preliminary approval "may be conducted informally." *Singleton*, 2014 WL 3865853, at *5 (citations omitted). An initial presumption of fairness applies if the proposed settlement was reached through arm's length negotiation. *Jones*, 2007 WL 2085357, at *2 (quoting Manual for Complex Litigation, Third Ed., § 30.42 (1995)); *In re Nat'l Football League Players' Concussion Injury Litig.*, 301 F.R.D. 191, 198 (E.D. Pa. 2014) ("*National Football I*").

    In determining whether to finally approve class action settlements, courts in the Third Circuit will consider the *Girsh* factors: "(1) the complexity, expense and likely duration of the litigation; (2) the reaction of the class to the settlement; (3) stage of the proceedings and the amount of discovery completed; (4) risks of establishing liability; (5) risks of establishing damages; (6) risks of maintaining the class action through the trial; (7) ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; and (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation." *Singleton*, 2014 WL 3865853, at *5 (*citing*

*Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975)). The *Girsh* final approval factors guide courts' preliminary assessments of class action settlements. *Singleton*, 2014 WL 3865853, at *5.

### B.     Preliminary Approval is Supported Because This Settlement Was Negotiated at Arm's Length Between Experienced Counsel

The Settling Parties participated in a mediation conference on January 12, 2022 with Jed Melnick, a skilled and respected mediator. "The participation of an independent mediator in settlement negotiations virtually insures that the negotiations were conducted at arm's-length and without collusion between the parties." *Alves v. Main*, 2012 WL 6043272, at *22 (D.N.J. Dec. 4, 2012), *aff'd*, 559 F. App'x 151 (3d Cir. 2014) (internal quotation omitted); *In re CIGNA Corp.*, 2007 WL 2071898, at *3 (E.D. Pa. July 13, 2007) (similar); *National Football I*, 301 F.R.D. at 198. Lead Counsel and Defendants' counsel are very experienced securities class action practitioners and zealously negotiated on their clients' behalf, further supporting settlement. *General Motors*, 55 F.3d at 796 (presumption of fairness if settlement negotiations conducted at arm's length by experienced counsel). Counsel on both sides were fully informed about the merits of the action prior to the mediation session through detailed mediation briefs and through participation in a prior mediation in May 2021.

### C.     The *Girsh* Factors Support Preliminary Approval

The first *Girsh* factor supports approval. "Large class actions alleging securities fraud" are "inherently complicated." *In re Ikon Office Sols., Inc., Sec. Litig.*, 194 F.R.D. 166, 179 (E.D. Pa. 2000). This case is no exception. Immunomedics had over 94 million shares of common stock outstanding and listed on the NASDAQ throughout the Class Period, demonstrating the large number of potential Settlement Class Members. Furthermore, securities class actions are notoriously complex and expensive to litigate as they require extensive investigations, discovery, and experts to opine on class certification and damages.

910557.2

The third factor supports approval.[5] At the time of settlement, this case was already over five years old. Lead Plaintiff had already conducted extensive pre-discovery investigation, prepared the Amended Complaint, prepared a Second Amended Complaint, and prepared and served (but did not file) a Motion for Class Certification.[6] Defendants prepared Answers to the Second Amended Complaint, and the Settling Parties prepared Motion to Dismiss briefing relating to the Amended Complaint and the Second Amended Complaint. The Settling Parties also propounded and responded to written discovery; produced and reviewed thousands of documents during discovery; wrote several detailed joint discovery dispute letters to the Court; argued discovery disputes to the Court; and attended two mediation sessions over the course of three full-day sessions. Lead Plaintiff also sat for seven hours for his own deposition. Lead Plaintiff also obtained several damages estimates from an expert and obtained an expert to opine on market efficiency in support of Lead Plaintiff's Motion for Class Certification. Based on all this, Lead Plaintiff has gained a clear understanding of the merits of the action.

The fourth, fifth, and sixth *Girsh* factors support approval. Lead Plaintiff is aware of Defendants' potential arguments, the strengths and weaknesses in this case, and the future risks/challenges in this case if litigation were to continue. The parties have already engaged in motion to dismiss briefing and have exchanged detailed mediation statements which has allowed Lead Plaintiff to preview Defendants' arguments at class certification, summary judgment, and trial. There is no guarantee that Lead Plaintiff's motion for class certification will be successful, whether Lead Plaintiff will survive Defendants' anticipated summary judgment motion, and/or whether Lead Plaintiff will prevail at trial. Therefore, a settlement addresses these real risks. Lead

---

[5] Before notice of a settlement is disseminated, it is not possible to gauge the reaction of the class (the second *Girsh* factor). Lead Plaintiff, however, supports the Settlement.

[6] *See* ¶ 6, Dkt. No. 104.

Plaintiff believes that the Settlement is an excellent result for the Settlement Class. Defendants have told Lead Plaintiff, and will continue to argue during the litigation, that the Settlement Class's damages are substantially less and dispute whether there are any damages at all. Accordingly, the Settlement is a positive, guaranteed result for the Class.

The seventh, eighth, and ninth *Girsh* factors decisively support approval. Given the numerous obstacles and risks to be overcome to achieve such a recovery through litigation and at trial, and its attendant delays, the Settlement Amount compares extremely favorably to the "average 5.5% – 6.2% of estimated losses recovered in securities fraud class [action] settlements since 1995." *In re Charter Commc'ns, Inc. Sec. Litig.*, 2005 WL 4045741, at *6 (E.D. Mo. June 30, 2005); *see also* Larrni T. Bulan and Laura E. Simmons, Cornerstone Research, *Securities Class Action Settlements—2020 Review and Analysis*, at 1[7] (noting that in 2020, the median non-accounting case settlement for 2020 was $10.1 million and for cases with Rule 10b-5 claims, the median settlement as a percentage of simplified tiered damages was 5.3% in 2020). Here, the $4 million Settlement represents approximately 9.7% to 28% of estimated losses between $14.4 million and $41.3 million, depending on assumptions.

### D.    The Attorneys' Fees Award and Lead Plaintiff's Award Are Reasonable

Rule 23(e)(2)(C)(iii) requires that the Court consider "the terms of any proposed award of attorney's fees, including timing of payment." The proposed Notice attached as an exhibit to the Settlement Stipulation states that Plaintiffs' Counsel will seek an award of attorneys' fees of no more than one-third of the Settlement Amount plus interest and expenses in an amount not to exceed $180,000. The proposed Notice also states that Lead Plaintiff will seek an award of $10,000.

---

[7] Available at https://securities.stanford.edu/research-reports/1996-2020/Securities-Class-Action-Settlements-2020-Review-and-Analysis.pdf

910557.2

Courts in this Circuit regularly award fees of one-third of the settlement.[8] Additionally, courts in this Circuit have awarded $10,000 incentive awards to lead plaintiffs in securities fraud class actions.[9] In this case, Lead Plaintiff participated in his own seven-hour deposition, attended two mediation sessions, and has continuously assisted in the prosecution of this case by reviewing motions, pleadings, and discovery. Thus, the requested award for attorneys' fees and Lead Plaintiff's $10,000 award in this case are reasonable.

## IV.   THE COURT SHOULD MAKE A PRELIMINARY DETERMINATION ON CLASS CERTIFICATION TO PROVIDE NOTICE TO THE PUTATIVE CLASS

In preliminarily approving a proposed settlement, this Court should preliminarily determine that class treatment is appropriate. *See Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) (trial court may disregard litigation and trial management issues in certifying a settlement class, but the proposed class must still satisfy the other requirements of Rule 23). The Court need not, at this point, conduct a rigorous analysis to determine whether to certify a settlement class, but should reserve this analysis for the final approval hearing. *National Football II*, 775 F. 3d at 586. "Permitting a district court to manage a settlement class in this manner provides the flexibility needed to protect absent class members' interests and efficiently evaluate the issues of class certification and approval of a settlement agreement." *Id.*

Under Rule 23, "every putative class action must satisfy the four requirements of Rule 23(a) and the requirements of either Rule 23(b)(1), (2), or (3)." *Nepomuceno v. Midland*

---

[8] *See e.g., Chan v. New Oriental Ed. & Tech. Group Inc.*, Case No. 2:16-cv-09279-KSH-CLW, Dkt. No. 94 (awarding lead counsel one-third of the settlement); *Li v. Aeterna Zentaris, Inc., et al.*, Case No. 3:14-cv-07081, Dkt. No. 193 (same); *Van Dorp v. Indivior PLC, et al.*, Case No. 2:19-cv-10792, Dkt. No. 57 (same); *Davis v. Katanga Mining Ltd.*, Case No. 2:17-cv-12188, Dkt. No. 107 (same); *Pepe v. Cocrystal Pharma, Inc. et al.*, Case No. 2:18-cv-14091, Dkt. No. 86 (same).

[9] *See e.g., Pepe v. Cocrystal Pharma, Inc. et al.*, Case No. 2:18-cv-14091, Dkt. No. 86 (awarding the lead plaintiff "$10,000 as an incentive award and reimbursement for his lost time and expenses in connection with his prosecution of this action.")

910557.2

*Credit Mgmt.*, 2016 WL 3392299, at *2 (D.N.J. Jun. 13, 2016) (quoting *Marcus v. BMW of N. Am., LLC*, 687 F. 3d 583, 590 (3d Cir. 2012)). The threshold requirements of Rule 23(a) are: numerosity, commonality, typicality, and adequacy. In securities class actions such as this one, certification pursuant to Rule 23(b)(3) is appropriate, which requires establishing that questions of law or fact common to class members predominate over individual questions, and that a class action is superior to other methods of adjudication. *See Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 460 (2013).

Moreover, the Supreme Court has rejected attempts to limit the certification of classes in securities actions by requiring a plaintiff to prove materiality or loss causation at the class certification stage. *See Amgen*, 568 U.S. at 467 ("[B]ecause '[t]he question of materiality … is an objective one, involving the significance of an omitted or misrepresented fact to a reasonable investor,' materiality can be proved through evidence common to the class."); *Erica P. John Fund, Inc. v. Halliburton Co.*, 563 U.S. 804, 813 (2011) ("*Halliburton I*") ("The Court of Appeals erred by requiring [the plaintiff] to show loss causation as a condition of obtaining class certification."); *Halliburton Co. v. Erica P. John Fund, Inc.*, 573 U.S. 258, 283-84 (2014) ("*Halliburton II*") (reaffirming presumption of reliance at class certification stage: "a public, material misrepresentation will distort the price of stock traded in an efficient market, and that anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation").

The Supreme Court has explained that "[a]lthough we have cautioned that a court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim,' …Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Amgen*, 568 U.S. at 465-66 (quoting *Wal-Mart Stores, Inc. v.*

10

*Dukes*, 564 U.S. 338, 351 (2011)). "Merits questions may be considered to the extent—but only to the extent—that they are relevant to determining whether the Rule 23 prerequisites for class certification are satisfied." *Id.* at 466. Rule 23's requirements need only be proved by a "preponderance of the evidence." *Williams v. Jani-King of Philadelphia Inc.*, 837 F. 3d 314, 319 (3d Cir. 2016). Here, there is no doubt the Class meets the requirements of Rules 23(a) and 23(b)(3). Additionally, Defendants do not oppose certifying the class for purposes of settlement.

> **E.     The Proposed Class Satisfies Rule 23(a)**
>
> **1.     The Class is Sufficiently Numerous That Joinder is Impracticable**

Rule 23(a)(1) requires that the class be so numerous that "joinder of all members is impracticable." "No minimum number of plaintiffs is required to maintain a suit as a class action, but generally if the named plaintiff demonstrates that the potential number of plaintiffs exceeds 40, the first prong of Rule 23(a) has been met." *Stewart v. Abraham*, 275 F. 3d 220, 226-27 (3d Cir. 2001). Numerosity is easily satisfied "in securities fraud cases involving publicly-owned and nationally-listed corporations that had a large amount of outstanding and traded shares during the relevant class period." *Roofer's Pension Fund v. Papa*, 333 F.R.D. 66, 74 (D.N.J. 2019); *Bing Li v. Aeterna Zentaris, Inc.*, 324 F.R.D. 331, 339 (D.N.J. 2018) ("courts have recognized a presumption that the numerosity requirement is satisfied when a class action involves a nationally traded security") (internal citations and quotations omitted).

Here, Immunomedics was a publicly owned corporation that had over 94 million shares of common stock outstanding and listed on the NASDAQ throughout the Class Period. Immunomedics's shares were purchased by Class members on the NASDAQ throughout the Class Period, at an average weekly trading volume of 14.9 million (15.74% of 94.8 million common shares outstanding during Class Period). *See City of Sterling Heights Gen. Employees' Ret. Sys. v.*

910557.2

*Prudential Fin., Inc.*, 2015 WL 5097883, at *8 (D.N.J. Aug. 31, 2015) ("*Prudential*") (numerosity satisfied where company's "stock trade[d] on the NYSE with significant daily volume"). Accordingly, the Class is sufficiently numerous as there are likely thousands of Class members.

### 2. There Are Common Questions of Law or Fact to the Class

Rule 23(a)(2) requires that "there are questions of law or fact common to the class." Pursuant to this rule, the class representative must "share at least one question of fact or law with the grievances of the prospective class." *Rodriguez v. Nat'l City Bank*, 726 F. 3d 372, 377 (3d Cir. 2013) (internal citations and quotations omitted). Since only one question of law *or* fact is necessary, "there is a low threshold for satisfying this requirement." *In re Novo Nordisk Secs. Litig.*, 2020 WL 502176, at *5 (D.N.J. Jan. 31, 2020) (citing *Newton v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 259 F. 3d 154, 183 (3d Cir. 2001)). "Where all plaintiffs, both individual representatives and member of the class, seek to establish the defendants' fraudulent conduct under the federal securities laws, commonality is found to exist." *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, 2012 WL 4482041, at *4 (D.N.J. Sept. 25, 2012) ("*Merck I*") (quotation and internal formatting omitted); *see also Bing Li,* 324 F.R.D. at 339 ("[c]ourts in this circuit… have recognized that securities fraud cases often present a paradigmatic common question of law or fact of whether a company omitted material information or made misrepresentations that inflated the price of its stock") (internal citations and quotations omitted).

Here, the common questions of law or fact include: (1) whether Defendants made materially false or misleading statements of omissions; (2) whether the Defendants acted with scienter; (3) whether the individual Defendants are control persons, as defined in the Exchange Act; and (4) the extent to which the Class sustained damages for violations of the Exchange Act. *See* SAC ¶ 104. Commonality is thus easily satisfied here. *See Bing Li*, 324 F.R.D. at 339; *Merck I*, 2012 WL 4482041, at *4 (commonality met in "securities fraud class action [that] involves

12

910557.2

questions such as whether Defendants' alleged statements and omissions were misleading, whether these statements and omissions were material, and whether Defendants acted with scienter.").

### 3. The Proposed Class Representative's Claims Are Typical of the Class's Claims

Rule 23(a)(3) requires that the class representative's claims be "typical" of those of the class. Like commonality, typicality is "undemanding," especially in a securities fraud context. *Prudential*, 2015 WL 5097883, at *9; *see also Newton*, 259 F. 3d at 183. "If the claims of the named plaintiffs and putative class members involve the same conduct by the defendant, typicality is established regardless of factual differences." 259 F. 3d at 183-84; *see also Bing Li*, 324 F.R.D. at 340 (same).

Typicality "does not mean that the claims of the individual plaintiffs and class representatives must be identical." *In re Corel Corp. Secs. Litig.*, 206 F.R.D. 533, 541 (E.D. Pa. 2002). Factual differences between the class representative and the putative class will not render a claim atypical since "'[e]ven relatively pronounced factual differences will generally not preclude a finding of typicality where there is a strong similarity of legal theories' or where the claim arises from the same practice or course of conduct." *In re NFL Players Concussion Injury Litig.*, 821 F.3d 410, 428 (3d Cir. 2016); *Alfaro v. First Advantage LNS Screening Sol. Inc.*, 2017 WL 3567974, at *3 (D.N.J. Aug. 16, 2017) (same).

Typicality is met here because the proposed Class Representative's (Lead Plaintiff) claims arise from the same conduct by Defendants that give rise to the claims of all putative Class members. The proposed Class Representative, like the other Class members, purchased Immunomedics common stock on the open market during the Class Period at alleged artificially inflated prices because of Defendants' alleged materially false and misleading statements and omissions, and thereby suffered damages when the truth was revealed. *See In re Merck & Co., Inc.*

13

*Sec., Derivative & ERISA Litig.*, 2013 WL 396117, at *5-8 (D.N.J. Jan. 30, 2013) ("*Merck II*") (typicality met where "Plaintiffs' claims arise from the very same alleged Exchange Act violations as those that give rise to the claims of the absent class members"); *see also Prudential*, 2015 WL 5097883, at *9 (typicality satisfied in class action alleging §§ 10(b) and 20(a) violations where "[t]he factual and legal predicates of [the proposed class representative's] claims are the same as those for the class members").

### 4.    The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Class

Rule 23(a)(4) requires that "the representative parties will fairly and adequately protect the interests of the class." "A named plaintiff is 'adequate' if his interests do not conflict with those of the class." *Novo Nordisk*, 2020 WL 502176, at *6 (citing *In re Prudential Ins. Co. Am. Sales Practice Litig. Agent Actions*, 148 F. 3d 283, 312 (3d Cir. 1998)). Only a "fundamental" conflict will defeat adequacy; that is, where "'some class members claim to have been harmed by the same conduct that benefitted other members of the class.'" *Merck II*, 2013 WL 396117, at *9 (quoting *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F. 3d. 1181, 1189 (11th Cir. 2013)).

"'The burden to prove that the representation is not adequate rests with the party challenging the class representation.'" *Alfaro*, 2017 WL 3567974, at *3. Here, no such proof can be offered because Mr. Tsai asserts the same claims and requests the same relief as the putative Class. Therefore, there is no conflict at all between Mr. Tsai and the absent members of the Class, let alone a fundamental conflict. *See Nepomuceno*, 2016 WL 3392299, at *5 (finding adequacy where the plaintiff did "not have interests antagonistic to or in conflict with the class").

Additionally, Mr. Tsai has *already* demonstrated his adequacy through his supervision and monitoring of this case. Mr. Tsai has deep familiarity with the claims in this action through his researching and filing of the SAC; has successfully opposed the Defendants' motion to dismiss

(Dkt. Nos. 34, 51, and 52); has and continues to actively participate in discovery by responding and agreeing to produce documents to Defendants' requests for production and other discovery requests; has and continues to review pleadings and motions submitted in this case; and has participated in the drafting of a motion for class certification. Mr. Tsai has vigorously pursued fact discovery, including propounding document requests. Mr. Tsai participated in three full days of two separate mediation sessions and sat for seven hours for his own deposition. Mr. Tsai has continued to supervise, monitor, and participate in the ongoing prosecution of this case and has adequately represented the interests of the Class.

Moreover, as a sophisticated and educated investor, Mr. Tsai has and continued to show a willingness to devote his knowledge and intellectual resources to this litigation. Mr. Tsai, a retiree, has been actively investing for more than thirty years, and has invested in numerous companies that manufacture cancer related drugs. He personally conducts his own independent market and investing research and spends most of his time in retirement researching companies to invest in. Mr. Tsai earned a bachelor's and master's degree in mechanical engineering from National Taiwan University in 1965 and 1967, respectively. He earned his PhD degree in mechanical engineering in 1976 from New York University. Prior to his retirement, Mr. Tsai was employed as a nuclear safety supervisor for a federal contractor company that worked on nuclear waste projects for the U.S. federal government from 1987 to 2010; worked as a nuclear safety senior engineer at a commercial nuclear reactor from 1980 to 1987; and worked in nuclear safety at another nuclear reactor from 1976 to 1980.

Mr. Tsai has further demonstrated his adequacy via his choice of counsel. He has selected well-qualified and skilled counsel with significant experience and a record of success in securities fraud class actions: Hagens Berman as Lead Counsel and Lite DePalma as Liaison Counsel for the

Class. Hagens Berman is actively engaged in complex litigation and has successfully prosecuted numerous securities fraud class actions on behalf of injured investors, recovering billions for investors. *See* Ex. B, Kathrein Decl. (Hagens Berman law firm resume). Lite DePalma is also a well-qualified and highly experienced firm that regularly appears in this District and is familiar with local practice. *See id.* (Lite DePalma law firm resume).

Mr. Tsai's degree of knowledge and participation, combined with the selection of accomplished counsel, sufficiently demonstrates his adequacy. *See Roofer's Pension Fund*, 333 F.R.D. at 77 (holding that the plaintiff was adequate because he demonstrates the required "minimal degree of knowledge" about the litigation and retained adequate counsel to represent the class); *Novo Nordisk*, 2020 WL 502176, at *7 (adequacy satisfied where plaintiffs actively participated in similar fashion: "Plaintiffs have made a threshold showing of adequacy based on their commitment to litigation, shared interests with members of the purported Class, and hiring of experienced counsel."). Indeed, Mr. Tsai is motivated to vigorously prosecute this case because he purchased 46,300 shares of Immunomedics common stock during the Class Period and suffered financial losses of $89,692.40. *In re Schering-Plough Corp./ENHANCE Secs. Litig.*, 2012 WL 4482032, at *6 (D.N.J. Sept. 25, 2012) ("when Lead Plaintiffs have a strong interest in establishing liability under federal securities law, and seek similar damages for similar injuries, the adequacy requirement can be met") (internal citations and quotations omitted).

F.    **The Proposed Class is Ascertainable**

While not required by the plain language of Rule 23, the Third Circuit has imputed a requirement of ascertainability to classes seeking certification under Rule 23(b)(3). *Byrd v. Aaron's Inc.*, 784 F. 3d 154, 163 (3d Cir. 2015) ("A plaintiff seeking certification of a Rule 23(b)(3) class must prove by a preponderance of the evidence that the class is ascertainable.").

910557.2

"[A]ll that is required is that [plaintiffs] show there is a reliable and administratively feasible mechanism… for determining class membership." *Hargrove v. Sleepy's LLC*, 974 F. 3d 467, 479 (3d Cir. 2020) (internal citations and quotations omitted). The Third Circuit has noted that "[t]he ascertainability inquiry is narrow" and "will not be relevant in every case." *Byrd*, 784 F. 3d at 165. This instruction seems especially pertinent to PSLRA cases, which must be based on documented securities transactions. Accordingly, PSLRA class certification decisions generally do not discuss the ascertainability inquiry. *See, e.g., Novo Nordisk*, 2020 WL 502176; *Roofer's Pension Fund*, 333 F.R.D. 66; *Bing Li*, 324 F.R.D. 331.

Nevertheless, to the extent ascertainability is relevant here, it is met. There is a "reliable, repeatable process whereby members of the putative class may be identified[.]" *In re Cmty. Bank of N. Va. Mortg. Lending Practices Litig.*, 795 F. 3d 380, 397 (3d Cir. 2015). First, the Class is plainly defined with reference to objective criteria—purchases of Immunomedics common stock within a specified time period. SAC ¶ 1. Second, it is easily determined whether Class members fall within this definition based on the records of Immunomedics and/or its transfer agent and brokerage statements. Class members may easily be identified from these records and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions. SAC ¶ 101; *see also In re Cmty. Bank*, 795 F. 3d at 397 (finding process where the plaintiff consults "business records and then follow[s] a few steps to determine whether the borrower is the real party in interest" was sufficient to demonstrate ascertainability); *In re Winstar Commc'ns Secs. Litig.*, 290 F.R.D. 437, 443 n. 6 (S.D.N.Y. 2013) (ascertainability requirement is "easily met in the context of securities litigation where the list of shareholders is readily obtainable"). Therefore, the Class in this case is sufficiently ascertainable.

910557.2

### G.      The Proposed Class Satisfies Rule 23(b)(3)

This case is perfectly suited for certification pursuant to Rule 23(b)(3) because "questions of law or fact common to class members predominate over any questions affecting only individual members, and… a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3). Importantly, Rule 23 "grants courts no license to engage in free-ranging merits inquiries at the certification stage." *Williams*, 837 F.3d at 322 (citing *Amgen*, 568 U.S. at 466). Instead, the Rule requires a showing that *questions* common to the class predominate, not that those questions will be answered, on the merits, in favor of the class. *Id.* at 459.

### 1.      Common Questions of Law and Fact Predominate Over Individual Questions

Predominance "is a test readily met in certain cases alleging consumer or securities fraud." *Amchen Prod., Inc. v. Windsor*, 521 U.S. 591, 625 (1997). Like other securities fraud cases, this case easily satisfies predominance. The predominance inquiry asks "whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Reyes v. Netdeposit, LLC*, 802 F. 3d 469, 488 (3d Cir. 2015) (*citing Amchen*, 521 U.S. at 623). The Third Circuit Court of Appeals has noted that one relevant "'guidepost[] that direct[s] the predominance inquiry[]'" is "'that commonality is informed by the defendant's conduct as to all class members and any resulting injuries common to all class members[.]'" *Id*. at 489 (citing *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 297 (3d Cir. 2011)). Citing *Wal-Mart Stores*, 564 U.S. at 338, the Third Circuit has further emphasized that "the focus is on whether the defendant's conduct was common as to all of the class members, not on whether each plaintiff has a 'colorable' claim." *Sullivan*, 667 F.3d at 299. Courts in this Circuit and elsewhere have agreed, repeatedly taken the view that "[t]he focus of the predominance inquiry is on liability, not damages." *Smith v. Suprema Specialties, Inc.*, 2007 WL

1217980, at \*9 (D.N.J. Apr. 23, 2007); *see also Utesch v. Lannett Co., Inc.*, 2021 WL 3560949, at

\*19 (E.D. Pa. Aug. 12, 2021) ("[I]ndividualized damages calculations do not defeat

predominance."); *Vista Healthplan, Inc. v. Cephalon, Inc.*, 2015 WL 3626005, at \*23 (E.D. Pa.

June 10, 2015) ("Circuit courts have largely rejected the interpretation urged by Defendants—that

variations in damages calculations between and among class members defeat predominance.").[10]

Here, common questions of law predominate because, as a federal securities fraud class

action, the key elements of falsity, materiality, scienter, and loss causation are common issues that

all class members will face. *See Amgen*, 568 U.S. at 460 ("As to materiality [or falsity, scienter, or

loss causation], the class is entirely cohesive: It will prevail or fail in unison. In no event will the

individual circumstances of particular class members bear on the inquiry."). Common legal

questions also predominate based on the "fraud-on-the-market" doctrine entitling the Class to a

presumption of reliance. *See In re Valeant Pharms. Int'l, Inc. Secs. Litig.*, 2020 WL 3166456, at

\*5 (D.N.J. Jun. 15, 2020) (certifying class after conducting predominance inquiry). Common

factual questions predominate because the Class's claims focus on the same conduct by Defendants

(including, for instance, Defendants' misleading statements relating to the ASCO presentation as

discussed in the Second Amended Complaint).

---

[10] While individual damages calculations may be required for each plaintiff, the need to make such mechanical calculations at a later stage does not affect predominance. *Neale v. Volvo Cars of N. Am., LLC*, 794 F. 3d 353, 374-75 (3d Cir. 2015); *see also Roofer's Pension Fund*, 333 F.R.D. at 88 ("precise damage calculations… are not required for class certification… [I]ndividualized issues may affect damages calculations so long as common issues determining liability predominate.") (citing *Comcast Corp. v. Behrend*, 569 U.S. 27, 35 (2013) and *Neale*, 794 F. 3d at 374-75)). Damages here can be calculated using standard, well-accepted methods.

**a. Common Questions of Law and Fact Predominate Because Lead Plaintiff's Claims Are Based on the Same Common Course of Conduct**

In securities fraud cases, "Defendants' liability will depend on the same evidence relating to the materiality of the misstatements and omissions at issue and Defendants' state of mind in making such statements or failing to disclose certain information." *Merck II*, 2013 WL 396117, at *12. These questions "are necessarily common to each class member given that Defendants' conduct alone is relevant to their proof." *Schuler v. Meds. Co.*, 2016 WL 3457218, at *4 (D.N.J. Jun. 24, 2016) (internal citations and quotations omitted).

Here, predominance is met because as a securities fraud case, elements of Section 10(b) of the Securities Exchange Act of 1934, including falsity, materiality, scienter, and loss causation, are indisputably issues that are common to the Class. *Amgen*, 568 U.S. at 460-61. These elements predominate because "failure of proof" on any of these elements "would end the case" for all Class members. *See id.* at 467-68. Moreover, Defendants' common course of conduct of misrepresentations and omissions affected all investors in the same manner, and all Class members have the same interest in proving such conduct. *See Valeant*, 2020 WL 3166456, at *5 (finding the class's claims depend on the same factual circumstances centered on Defendants' course of conduct). As in *Valeant*, the predominance of common questions exists here where "Lead Plaintiff allege[d] that Defendants' course of conduct artificially inflated (or artificially maintained) the prices of [its securities] and that when the truth regarding [its] financial condition [and] deceptive business practices… was revealed through a series of disclosures… the price of [its securities] fell and Class Members were damaged." *Id.*

**b. All Class Members Are Entitled To a Presumption of Reliance**

Immunomedics's stock traded on the NASDAQ in an efficient, "well-developed market for securities," which entitles the Class to a presumption of reliance ("the *Basic* presumption").

*See Basic Inc. v. Levinson*, 485 U.S. 224, 247 (1988). In an efficient market, "a public, material misrepresentation will distort the price of stock traded" and "anyone who purchases the stock at the market price may be considered to have done so in reliance on the misrepresentation." *Halliburton II*, 573 U.S. at 283-84; *see also Amgen*, 568 U.S. at 466 ("in an efficient market, all publicly available information is rapidly incorporated into, and thus transmitted to investors through, the market price"). This "fraud on the market" theory is typically employed in securities class actions to prove the Exchange Act's requirement that plaintiffs relied on the misleading statements and omissions and similarly bolster the predominance of common questions. Accordingly, the "'fraud on the market' theory [of reliance]… accords plaintiffs in Rule 10b-5 class actions a rebuttable presumption of reliance if plaintiffs bought or sold their securities in an 'efficient' market." *Bing Li*, 324 F.R.D. at 343 (*quoting In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1419 n.8 (3d Cir. 1997)). The *Basic* presumption will apply for purposes of class certification upon a showing that "(1) the alleged misrepresentations were publicly known; (2) that they were material; (3) that the stock traded in an efficient market; and (4) that the plaintiff[s] traded the stock between the time the misrepresentations were made and when the truth was revealed." *See Roofer's Pension Fund*, 333 F.R.D. at 79 (citing *Halliburton II*, 573 U.S. at 268).[11]

The first and fourth elements are clearly met. As to the first element, the alleged misrepresentations were all publicly available in Immunomedics's press releases, public

---

[11] While materiality is an additional element that must be proven to establish the *Basic* presumption on the merits, it does not need to be proven at class certification to satisfy Rule 23. *Halliburton II*, 573 U.S. at 282 ("Even though materiality is a prerequisite for invoking the *Basic* presumption … it should be left to the merits stage, because it does not bear on the predominance requirement of Rule 23(b)(3)"); *Amgen*, 568 U.S. at 474 ("materiality need not be proved prior to Rule 23(b)(3) class certification"); *Roofer's Pension Fund*, 333 F.R.D. at 79 n.7 ("Although the *Basic* presumption also requires a showing of materiality, at the class certification stage, Lead Plaintiff need not prove that element.") (citing *Halliburton II*, 573 U.S. at 282).

910557.2

conference calls, and Securities and Exchange Commission ("SEC") filings. As to the fourth element, Lead Plaintiff and the Class allege in the SAC that they purchased or otherwise acquired Immunomedics securities during the Class Period. SAC ¶ 1. As to the second element, materiality does not need to be proven at the class certification stage. *See supra* footnote 11. The third element, market efficiency, is also satisfied via application of the factors set forth in *Cammer v. Bloom*, 711 F. Supp. 1264, 1286-87 (D.N.J. 1989) (the "Cammer factors"), which courts in this Circuit employ to determine if the market for a security was efficient. *See e.g.*, *Roofer's Pension Fund*, 333 F.R.D. at 80 n.8; *In re DVI, Inc. Sec. Litig.*, 639 F.3d 623, 634 n.16 (3d Cir. 2011). In addition to the *Cammer* factors, three additional factors, referred to as the "*Krogman/Unger*" factors, are also used by some courts in the Third Circuit to determine market efficiency. Lead Plaintiff's expert has established each of the *Cammer* factors, and the *Krogman/Unger* factors support the conclusion that Immunomedics's stock traded in an efficient market during the Class Period.

### c. Immunomedics's Listing on the NASDAQ Is, By Itself, Evidence of Market Efficiency

The Third Circuit has held that "the listing of a security on a major exchange such as the NYSE or the NASDAQ weighs in favor of a finding of market efficiency." *Merck II*, 2013 WL 396117, at *11. Here, Immunomedics's stock indisputably traded on the NASDAQ, a public (and axiomatically efficient) market during the Class Period. SAC ¶ 23.

### (1) Each of the *Cammer* Factors Support Class Certification

In the Third Circuit, courts use the factors set forth in *Cammer* to evaluate whether a security traded in an efficient market. *Merck II*, 2013 WL 396117, at *11 ("The *Cammer* factors may be useful to determine efficiency if the market on which a security is traded is less open and well-developed than the NYSE."). The *Cammer* factors are:

910557.2

> (1) the average weekly trading volume; (2) the number of security analysts following and reporting on the security; (3) the extent to which market makers traded the security; (4) the issuer's eligibility to file an SEC registration Form S-3; and (5) the cause-and-effect relationship between material disclosures and changes in the security's price.

*See Cammer*, 711 F. Supp. at 1286-87; *accord Roofer's Pension Fund*, 333 F.R.D. at 81. "These factors are not meant to be… a rigid checklist. A plaintiff need only show that the stock traded in a generally efficient market at the class certification stage, a burden that is not onerous." *Roofer's Pension Fund*, 333 F.R.D. at 81 (citing, *e.g.*, *Halliburton II*, 573 U.S. at 279) (internal citations, quotations, and formatting omitted). In this case, however, each of the *Cammer* factors are met and evidence that Immunomedics common stock traded efficiently. Thus, a presumption of reliance is warranted.

*First*, Immunomedics's average weekly trading volume during the Class Period was high: 14.9 million (15.74% of 94.8 million common shares outstanding during Class Period). This volume indicates that the stock was trading in an efficient market since investors will often execute trades "on the basis of newly available or disseminated corporate information." *In re DVI Inc. Sec. Litig.*, 249 F.R.D. 196, 208 (E.D. Pa. 2008) (*citing Cammer*, 711 F. Supp. at 1286); *see also Roofer's Pension Fund*, 333 F.R.D. at 81 ("a trading volume of two percent or more justifies a strong presumption of market efficiency"); *Merck I*, 2012 WL 4482041, at *5 (finding a trading volume of 2.8 percent to be "well over the threshold justifying a 'strong presumption,'" and therefore "weigh[ing] in favor of an efficient market.").

*Second*, Immunomedics was covered at various times by at least four analysts employed by brokerage firms, two of which wrote at least ten publicly available reports and recommendations about the Company during the Class Period. This extensive coverage by securities analysts infers an efficient market because it demonstrates that the Company's

announcements, filings, earnings calls, press releases, and other news pertaining to the Company were broadly followed, analyzed, and discussed. *Roofer's Pension Fund*, 333 F.R.D. at 83 ("Courts [ ] assess the <u>total</u> number of securities analysts covering a security because the greater the number of securities analysts following and reporting on a company's stock, the greater the likelihood that information released by a company is being relied upon by investors.") (underlining in original) (internal citations and quotations omitted); *see also DVI*, 249 F.R.D. at 209-210 (finding that coverage by "at least three analysts" "was sufficient to favor a finding of market efficiency.").

*Third*, there were at least 108 market makers for Immunomedics common stock. "A market-maker is one who helps establish a market for securities by reporting bid-and-asked quotations... and who stands ready to buy or sell at these publicly quoted prices." *Hull v. Glob. Dig. Sols., Inc.*, 2018 WL 4380999, at *8 (D.N.J. Sept. 14, 2018) (internal quotations, citation, and formatting omitted). Immunomedics's 108 market makers "justif[ies] a substantial presumption that the market for the security is an efficient one." *Cammer*, 711 F. Supp. at 1293 (ten or more market makers supports efficiency); *Roofer's Pension Fund*, 333 F.R.D. at 83-84 (at least 17 market makers weighs in favor of efficiency).

*Fourth*, Immunomedics was eligible to file Form S-3 registration statements with the SEC during the Class Period, further supporting a finding of market efficiency. *See Cammer*, 711 F. Supp. at 1277 (companies "entitled to issue new securities using SEC Form S-3 would almost by definition involve stocks trading in an 'open and developed' market"); *Merck I*, 2012 WL 4482041 at *5 (finding market efficiency based, inter alia, on the defendant's eligibility to file a Form S-3 during the class period).

*Fifth*, Immunomedics's stock price immediately reacted to the unexpected news. For example, June 3, 6, 9, and 24, 2016, showed large stock price reactions upon the disclosure of

910557.2

certain events and Immunomedics-related news during the Class Period. Lead Plaintiff's expert performed an "event study" to examine the impact of new public information about Immunomedics on the market price of Immunomedics common stock. An event study can show that "[a] large abnormal stock price movement occur[ed] at the same time the market receives news about an event," which "suggests that the event caused the abnormal price movement." *Roofer's Pension Fund*, 333 F.R.D. at 84 (internal quotation and citation omitted). Lead Plaintiff's expert's event study analysis demonstrated a clear cause-and-effect relationship advancing the conclusion that Immunomedics common stock was trading in an efficient market.

### (2)    The *Krogman/Unger* Factors Likewise Support Class Certification

In addition to the *Cammer* factors, some courts in the Third Circuit also consider the three additional "*Krogman/Unger*" factors, which are "(1) the magnitude of the company's market capitalization; (2) the size of the bid-ask spread for the company's stock, i.e., the difference between the price that potential buyers are willing to pay and the price at which potential sellers are willing to sell; and (3) the company's float, i.e., the percentage of shares that are publicly held." *Prudential*, 2015 WL 5097883, at *6 (citing *Krogman v. Sterritt*, 202 F.R.D. 467, 478 (N.D. Tex. 2001) and *Unger v. Amedisys*, 401 F. 3d 316, 323 (5th Cir. 2005)). All of these factors also support a conclusion of market efficiency for Immunomedics common stock.

***Market Capitalization*:** Immunomedics's average market capitalization during the Class Period was $347 million, putting Immunomedics in the 6th decile of U.S. companies by size (Immunomedics's market capitalization was larger than the market capitalization of at least 49% of all other publicly-traded companies in the United States). This is sufficient to demonstrate market efficiency. *See e.g.*, *DVI*, 249 F.R.D. at 212 (finding market efficiency where market capitalization during the Class Period ranged between $ 300 million to $ 12 million).

910557.2

*Bid-Ask Spread*: The average bid-ask spread for Immunomedics common stock was 0.29% during the Class Period. *See Cheney v. Cyberguard Corp.*, 213 F.R.D. 484, 501 (S.D. Fla. 2003) (bid-ask spread below 5.6% suggests market efficiency) (cited by *Hull*, 2018 WL 4380999, at *6 ("Courts have also considered the… bid-ask spread.")).

*Float*: During the Class Period, Immunomedics's average public float, meaning the percent of outstanding shares held by non-insiders, was 90%, which further supports a finding of market efficiency. The majority of Immunomedics outstanding shares were publicly held during the Class Period, which indicates that the price of the stock was likely to accurately reflect all available information about the Company. *DVI*, 249 F.R.D. at 212 (*citing Krogman*, 202 F.R.D. at 478) (holding that low public float of 46% weighed against finding market efficiency).

In sum, all of the factors customarily considered by courts in determining market efficiency support a finding that Immunomedics's common stock traded in an efficient market during the Class Period. Thus, the fraud-on-the-market theory applies and class-wide reliance may be presumed. When combined with the other common issues of falsity, materiality, scienter, loss causation, and damages, the predominance requirement under Rule 23(b)(3) is fully satisfied.

### 2.    A Class Action Is Superior to Piecemeal Litigation

Rule 23(b)(3) requires that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." The rule provides four guideposts for the Court to consider, including:

> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and

910557.2

(D) the likely difficulties in managing a class action.

*Id.* Here, each factor unquestionably weighs in favor of the superiority of a class action.

**First**, this case involves a large number of investors. Since the typical securities fraud claim is generally too small for each individual class member to maintain a separate action, there is little incentive for Class members here to proceed individually. *Novo Nordisk*, 2020 WL 502176, at *9 ("class actions are appropriate in securities cases where a significant number of investors with relatively small losses would likely have decreased motivation to pursue their claims individually") (*citing Krangel v. Golden Rule Res., Ltd.*, 194 F.R.D. 501, 506 (E.D. Pa. 2000)).

**Second**, Lead Plaintiff is unaware of any individual direct shareholder actions brought by a Class member against Defendants alleging the claims at issue here. The lack of such actions supports an inference that Class members lack the ability or willingness to pursue individual actions. *See Roofer's Pension Fund*, 333 F.R.D. at 78 (superiority requirement satisfied where there was little, if any, "class member interest in prosecuting th[e] matter on an individual basis.")

**Third**, because of the likely geographical dispersion of the large number of Class members involved in this case, it is desirable to concentrate the litigation in this forum. *See Roofer's Pension Fund*, 333 F.R.D. at 78 ("given the voluminous class size, class adjudication in this forum is appropriate to ensure consistency in adjudication and to prevent the possibility of conflicting outcomes that may be rendered on individual claims").

**Fourth**, as in numerous other securities actions, this Court is unlikely to face any unusual difficulties in managing a class action. *Prudential*, 2015 WL 5097883, at *13 ("it is well-settled that the class action is a particularly appropriate vehicle for adjudication of federal securities cases"). Thus, a class action would be the most fair and efficient way to resolve the common issues alleged in this action. *See Johnson v. Comodo Grp., Inc.*, 2020 WL 525898, at *11 (D.N.J. Jan.

27

910557.2

31, 2020) (superiority met where "litigating these claims individually would cost many more millions of dollars and take a substantially greater toll on judicial resources").

### H.     Hagens Berman Should Be Appointed as Class Counsel Under Rule 23(g)

For purposes of settlement, Lead Counsel should be appointed as Class Counsel. Rule 23(g) requires the Court to appoint an applicant as Class Counsel after considering: (1) the quality of work counsel performed investigating the claims; (2) counsel's experience handling similar class actions; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class. *See* Rule 23(g)(1)(A). If the Court finds these factors are met, and that counsel will "fairly and adequately represent the interests of the class," then the applicant should be appointed Class Counsel. *See* Rule 23(g)(2).

Hagens Berman has all the qualities required to be Class Counsel. As Lead Counsel, Hagens Berman thoroughly investigated the Class's claims, amended the Complaint (Dkt. No. 34), and stated a claim with the specificity required by Federal Rule 9(b) and the PSLRA. *See* Dkt. Nos. 51-52 (Order and Opinion denying Defendants' Motion to Dismiss). Additionally, Hagens Berman is comprised of experienced class action attorneys who have extensive knowledge of the applicable securities laws. *See* Ex. B, Kathrein Decl. Hagens Berman has successfully represented investors in securities fraud class actions throughout the United Stated and has recovered billions of dollars on behalf of clients and classes. *See id.*

Finally, as Class Counsel, Hagens Berman has devoted considerable resources on behalf of the Class. After overcoming Defendants' motion to dismiss, the firm fully engaged in the discovery process, drafted a Motion for Class Certification, participated in Lead Plaintiff's deposition, and has attended two mediations over the course of three full days. The hiring of an expert to analyze the market for Immunomedics's stock is further evidence of Hagens Berman's

910557.2

commitment to devote resources for the benefit of the Class. Accordingly, Hagens Berman has fairly and adequately represented the Class and should be appointed Class Counsel. As Liaison Counsel, Lite DePalma is likewise well-qualified, has been instrumental in facilitating and assisting with the progression of this case, and should continue to serve in such capacity.

## V.     THE PROPOSED NOTICE TO CLASS MEMBERS SATISFIES RULE 23(C)(2)(B)

The Proposed Order Granting Lead Plaintiff's Motion for Preliminary Approval of Class Action Settlement ("Preliminary Approval Order"), which is attached as Exhibit A to the Settlement Stipulation, mandates that within sixteen (16) calendar days of the Court's Preliminary Approval Order, Lead Counsel shall provide notice to Class Members through either by (a) emailing the Summary Notice to Settlement Class Members for whom the Claims Administrator is able to obtain email addresses, substantially in the form annexed as Exhibit A-3 to the Settlement Stipulation or (b) causing the Notice and the Proof of Claim and Release Form, if no email address can be obtained, mailed, by first class mail, postage prepaid, to Settlement Class Members who can be identified with reasonable effort by Class Counsel, through the Claims Administrator, substantially in the form as annexed as Exhibits A-1 and A-2 to the Settlement Stipulation.

The proposed Notice provides detailed information concerning: (a) the rights of Class Members, including the manner in which objections can be lodged; (b) the nature, history, and progress of the litigation; (c) the proposed Settlement; (d) the process for filing a proof of claim; (e) a description of the Plan of Allocation; (f) the fees and expenses to be sought by Lead Counsel; and (g) the necessary information for any Class Member to examine the Court records should they desire to do so. The Notice also sets forth instructions to securities brokers and other nominee holders for forwarding the Notice to those persons for whom the nominees held shares in "street

name." Within ten (10) calendar days after the emailing of the Summary Notice and mailing of the Notice and Proof of Claim and Release Form, Lead Counsel will cause the Summary Notice, to be published electronically once on *GlobeNewswire* and in print once in the *Investor's Business Daily*.

The proposed Notice and its dissemination as well as the Summary Notice, are thus "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). The proposed Notice also informs Class Members how to object or exclude themselves from the Settlement, and clearly states that all those who remain in the Class are bound by the terms of the Settlement and all past, present, and future orders and judgments in this Litigation.

Furthermore, the disclosures the PSLRA mandates are provided in the proposed Notice, as it states the amount of the Settlement on both an aggregate and average per share basis; provides a brief statement explaining the reasons why the Parties are proposing the Settlement; and states the amount of attorneys' fees and maximum amount of litigation expenses (both on an aggregate and average per share basis) that Lead Counsel will seek; and provides the names, addresses, and telephone numbers of representatives of the Claims Administrator and Lead Counsel who will be available to answer questions from Class Members. *See* 15 U.S.C. § 78u-4(a)(7). The form and manner of providing Notice to the Class here satisfy the requirements of due process, Rule 23, and the PSLRA, 15 U.S.C. § 78u-4(a)(7). The Notice and Summary Notice "provided all of the required information concerning the class members' right[s] and obligations under the settlement." *In re Prudential Ins.*, 148 F.3d at 328. The manner of providing notice, which includes individual notice by email or mail to all Class Members who can be reasonably identified, represents the best

notice practicable under the circumstances and satisfies the requirements of due process and Rule 23. *See Jones*, 2007 WL 2085357, at *5 ("[T]he proposed distribution of notice to class members by first class mail is reasonable because no alternative method of distribution is more likely to notify class members … .").

Thus, the proposed method of notice described above satisfies due process. *See Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 173 (1974).

## VI.   PROPOSED SCHEDULE OF EVENTS

Lead Plaintiff proposed the following schedule of events leading to the Settlement Hearing as set forth in the Preliminary Approval Order filed herewith:

| Event | Deadline for Compliance |
|---|---|
| Date for Settlement Hearing. | At the Court's convenience after the Court preliminarily approves the settlement |
| Emailing of Summary Notice/Mailing of Notice and Proof of Claim and Release. | No later than 28 calendar days after the entry of Preliminary Approval Order. (Preliminary Approval Order ¶¶ 10) (the "Notice Date") |
| Publication of Summary Notice. | No later than 28 calendar days after the Notice Date. (Preliminary Approval Order ¶¶ 15) |
| Deadline for filing Proofs of Claim. | No later than 44 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 17(a)) |
| Filing deadline for requests for exclusion. | Received no later than 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 19) |
| Date for Lead Plaintiffs to file and serve papers in support of the Settlement, the Plan of Allocation and for application for attorneys' fees, Lead Plaintiff's award, and reimbursement of expenses. | 28 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶25) |
| Filing deadline for objections. | 21 calendar days prior to the Settlement Hearing. (Preliminary Approval Order ¶ 23) |

31

Lead Plaintiff respectfully requests that the Court schedule the Settlement Hearing for a date at least 100 calendar days after entering the Preliminary Approval Order, which will allow enough time for Lead Counsel to email the Summary Notice and/or mail the Notice, publish the Summary Notice, file the motion in support of final approval of the Settlement and the Plan of Allocation and for application for attorneys' fees, Lead Plaintiff's award, and reimbursement of expenses, and the reply in support of final approval, and will allow Class Members enough time to submit their proof of claim, exclude themselves, or make objections to the Settlement.

## VII.   CONCLUSION

Today, the Court need not determine whether the Settlement is fair, reasonable, and adequate, and whether class treatment is appropriate. That determination is for the final approval hearing. Rather, this motion asks the Court to put the settlement process in motion.

This Settlement results from extensive arm's length negotiation, including a mediation conference before an experienced mediator. The Court should grant the Settlement preliminary approval. The Court should also make a preliminary determination that class treatment is appropriate, approve the form and manner of notice, and set a date for the final approval hearing.

**LITE DEPALMA GREENBERG & AFANADOR, LLC**

Dated: April 14, 2022        _/s/ Bruce D. Greenberg_
Bruce D. Greenberg
570 Broad Street, Suite 1201
Newark, NJ 07102
Telephone: (973) 623-3000
bgreenberg@litedepalma.com

*Liaison Counsel for the Class*

32

910557.2

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Reed R. Kathrein (admitted Pro Hac Vice)
Lucas E. Gilmore
Wesley A. Wong (admitted Pro Hac Vice)
715 Hearst Avenue, Suite 202
Berkeley, CA 94710
Telephone: (510) 725-3000
reed@hbsslaw.com
lucasg@hbsslaw.com
wesleyw@hbsslaw.com

**HAGENS BERMAN SOBOL SHAPIRO LLP**
Steve W. Berman (admitted Pro Hac Vice)
1301 Second Avenue, Suite 2000
Seattle, WA 98101
Telephone: (206) 623-7292
steve@hbsslaw.com

*Lead Counsel for the Class*

910557.2